**CITIZENS FOR FAIR TAXATION ET AL., Appellants,**

**v.**

**City of TOLEDO et al., Appellees.**

[Cite as *Citizens for Fair Taxation v. Toledo* (1992), 90 Ohio App.3d 272.]

Court of Appeals of Ohio,
Lucas County.

No. L–91–302.

Decided Sept. 11, 1992.

R. *Michael Frank* and *W. David Arnold,* for appellants.

*Ralph J. Lewis,* for appellees.

---

ABOOD, Judge.

This is an appeal from two decisions of the Lucas County Court of Common Pleas. In the first decision, the trial court granted defendants-appellees city of Toledo et al.'s motion to dismiss those claims that were originally raised in plaintiffs-appellants Citizens for Fair Taxation et al.'s complaint and then raised again in their amended complaint. In the second decision, the trial court granted appellees' motion for summary judgment as to those additional claims that were set forth only in appellants' amended complaint. Appellants have appealed, setting forth the following assignments of error:

"First Assignment of Error:

"The trial court erred in granting Defendants' Motion to Dismiss Plaintiffs' Complaint pursuant to Civil Rule 12(B)(6).

"Second Assignment of Error:

"The trial court erred in failing to find that Chapter XIII of the Charter of the City of Toledo prohibits the City Council from enacting *ex-post-facto* legislation to pay a private contractor an amount in excess of $2500.00 for services previously performed under an oral agreement that did not comply with the contracting requirements of Chapter XIII.

"Third Assignment of Error:

"The trial court erred in finding, as a matter of law, that Chapter XIII of the Charter of the City of Toledo permits the City to ratify a void oral contract on the basis of a 'moral obligation.'

"Fourth Assignment of Error:

"The trial court erred in granting Defendants' Motion for Summary Judgment.

"Fifth Assignment of Error:

"The trial court erred in [not] holding that John Gotherman's lobbying for passage of House Bill 127 on behalf of the City of Toledo created a conflict of interest with his role as legal counsel to the Ohio Municipal League which opposed passage of the Bill.

"Sixth Assignment of Error:

"The trial court erred in failing to hold that the simultaneous representation of the City of Toledo and the OML, given the potential for disclosure of confidential information in each relationship, constituted the appearance of professional impropriety in contravention of Canon Nine of the Code of Professional Responsibility.

"Seventh Assignment of Error:

"The trial court erred in denying Plaintiffs' Motion for Summary Judgment.

"Eighth Assignment of Error:

"The trial court erred in failing to hold that before undertaking the representation of the City of Toledo John Gotherman was obligated to disclose to the City the possible effect of his representation of the Ohio Municipal League on the exercise of his independent professional judgment and obtain its consent to the dual representation."

The facts giving rise to the issues raised on appeal are as follows. On September 25, 1990, the Toledo City Council passed ordinance Nos. 946–90 and 947–90 by a vote of five to four. (See Appendix.) The purpose of ordinance No. 946–90 was to authorize the appropriation and payment of $100,000 for the "fees and expenses of special counsel participating in behalf of the City's efforts and endeavors in seeking enactment of Amended Substitute House Bill 127 by the Ohio Legislature." The purpose of ordinance No. 947–90 was to authorize the city manager and city law director to enter into an agreement with the law firm of Calfee, Halter & Griswold to act as "special counsel in connection with the City's efforts to seek, pursue, and otherwise advance the passage of Amended Substitute House Bill 127 in the Ohio Legislature." Included in this ordinance was a provision for the ratification of services already provided by that firm.

On October 1, 1990, appellants requested that the acting city law director apply (pursuant to R.C. 733.56 and section 113 of the City of Toledo Charter), in the name of the city, to the Lucas County Court of Common Pleas for an injunction to restrict the implementation of the two ordinances, which they claimed called for a misappropriation of funds and the execution of a contract in contravention of the city charter. The law director responded that the two ordinances were not in violation of the city charter.

On October 19, 1990, appellants filed a taxpayers' complaint against the city of Toledo, the city manager, the director of finance and the law director. The complaint alleged that prior to September 25, 1990, the date of the passage of the two ordinances, the law firm of Calfee, Halter & Griswold had already submitted invoices to the city for legal fees for services performed to secure the passage of Am.Sub.H.B. No. 127 ("House Bill 127"); that at no time prior to September 25, 1990 had the city entered into a written contract for such services or had the city council authorized such a contract or appropriated funds therefor; that at all times the amount involved was in excess of $2,500; that ordinance No. 946–90 retrospectively appropriated the sum of $100,000 to pay for legal services previously performed by Calfee, Halter & Griswold; that ordinance No. 947–90 authorized the city manager and the law director to enter into an agreement retroactively for the services previously performed by that firm; and that the legal services were performed without a written contract or prior authorization by city council and, therefore, the ordinances were enacted in violation of sections 228 [1] and 229 [2] of the Charter of the City of Toledo and were void. Appellants requested that the trial court issue an injunction restraining the misapplication of the funds of the city and the execution of any contract made on behalf of the city in contravention of law, and that it declare ordinance Nos. 946–90 and 947–90 void. On the same day, appellants filed motions for preliminary and permanent injunctions and a request for a temporary restraining order.

On October 25, 1990, the parties signed a consent order in which they agreed that appellees would not execute a contract with Calfee, Halter & Griswold, as authorized by ordinance No. 947–90 or expend any funds, pursuant to ordinance No. 946–90, until such time as the court ruled upon plaintiffs' motion for a preliminary injunction.

On November 5, 1990, appellees filed a motion to dismiss appellants' complaint pursuant to Civ.R. 12(B)(6). In support of their motion, appellees argued that

---

1. "Section 228. Contracts and purchases in excess of two thousand five hundred dollars. No contract shall be executed or purchase made involving an expenditure of two thousand five hundred dollars or more unless the same shall have been first authorized by the Council. Every such contract shall be in writing and shall be executed in behalf of the City of Toledo by the City Manager. In case of such a purchase no bid shall be accepted without the written approval of the City Manager."

2. "Section 229. Certain contracts and measures void. All contracts, agreements, or other obligations entered into, and all ordinances, resolutions, and orders adopted, contrary to the provisions of the three preceding sections, shall be void, and no person shall have any claim or demand against the City thereunder, nor shall the Council, or any officer of the City, waive or qualify the limits fixed by any ordinance, resolution or order, complying with this or the three preceding sections, or fasten upon the City any liability whatever in excess of such limits, or release any party from an exact compliance with his contract under such ordinance, resolution, or order."

the city charter did not prohibit the passage of the ordinances in question and, therefore, the complaint failed to state a claim for which relief could be granted.

On November 13, 1990, appellants filed an amended complaint which added the factual allegations that, on or about December 1, 1988, Sheldon Rosen, the city law director, claiming to act with the approval of Mayor Donna Owens, City Manager Phil Hawkey and the city council, orally contracted with John Gotherman, an attorney with Calfee, Halter & Griswold, to draft and lobby for the enactment of House Bill 127 at a rate of $200 per hour with no maximum contract amount; that at the time this agreement was entered into the matter had not been submitted to city council for its approval and appropriation of funds to pay the fee; that on August 28, 1990, the law firm submitted an invoice to the city in the amount of $92,500 and, by memorandum dated November 2, 1989, Rosen advised Hawkey of it and asked him to direct the division of management services to incorporate a projected expense of $100,000 into the law department's 1990 budget; that by memorandum dated January 11, 1990, Rosen advised then Mayor John McHugh and the city council of the bill for the legal services; that in a memorandum dated August 24, 1990, Ed Yosses, then acting law director, acknowledged that former Mayor Owens and former City Manager Hawkey had retained the law firm and Gotherman to assist the city in drafting and seeking enactment of House Bill 127 and that prior to doing so they had "no formal authorization from council"; that on September 6, 1990, acting City Manager Thomas Hoover advised the mayor and the council that he was submitting two ordinances to them that would authorize up to $100,000 for payment to the Calfee firm and Gotherman; that in the memorandum Hoover stated that the purpose of the legislation was to "authorize an agreement with the law firm retroactively"; and that in a memorandum dated September 13, 1989, Yosses advised the mayor and the city council to pay the invoice and that if they refused to pay "the firm would sue for the full value of services rendered regardless of the existence of any agreement as to its value." Copies of each of the memorandums were attached to the amended complaint.

The amended complaint also set forth, as an additional claim for relief, that attorney Gotherman had been engaged as legal counsel to the Ohio Municipal League which, on September 11, 1990, voted to oppose House Bill 127; that this representation gave rise to a conflict of interest; and, therefore, the contract that the city sought to enter into with Gotherman was contrary to public policy. On November 16, 1990, appellants filed their memorandum in opposition to appellees' motion to dismiss.

On December 27, 1990, the trial court filed its entry in which it found that the "still to be executed written contract authorized by ordinance No. 947–90" was in full compliance with section 228 of the city charter and that no expenditure was

made prior to council's authorization, and entered judgment granting appellees' motion to dismiss as to all those claims that were raised in the original complaint and raised again in the amended complaint. As to those claims that were raised for the first time in the amended complaint, the trial court granted appellees until January 11, 1991 to file a motion to dismiss and/or a motion for summary judgment. The trial court also ordered the consent entry of October 25, 1990 extended pending further action as to the new claims contained in the amended complaint.

On January 11, 1991, appellees filed a motion for summary judgment as to the remaining count of the amended complaint which alleged that a conflict of interest arose out of Gotherman's representation of both the Ohio Municipal League and the city of Toledo.

On February 5, 1991, appellants filed a cross-motion for summary judgment on the conflict-of-interest issue. In support of their motion, appellants argued that, since Gotherman was paid a monthly retainer by the Ohio Municipal League and part of his contract required him to represent them before the Ohio General Assembly and provide legal services and advice to their board of trustees and policy committee, a conflict of interest was created by his representation of the city of Toledo concerning House Bill 127, particularly since on September 11, 1990, the Ohio Municipal League's board of trustees resolved to oppose the Bill. Appellants submitted that as a result of that conflict a contract between Gotherman and the city would be in violation of ethical standards and void as a matter of public policy and, therefore, they were entitled to summary judgment on that count of their amended complaint.

On July 24, 1991, the trial court filed its judgment entry in which it granted appellees' motion for summary judgment and denied appellants' cross-motion for summary judgment. In arriving at its decision, the court found that Gotherman's lobbying activities on behalf of the city did not constitute a conflict of interest with his duties as legal counsel for the Ohio Municipal League since the subject matter of the two relationships was not substantially related, that Gotherman never represented both clients on the same matter and that there was no evidence of any confidential disclosures.

On August 20, 1991, appellants filed their notice of appeal.

In their first, second and third assignments of error, appellants challenge the trial court's granting of appellees' motion to dismiss. Appellants assert that the trial court erred in failing to find that the city charter prohibited city council from enacting *ex post facto* legislation for the payment of a legal fee in excess of $2,500 for services previously performed under an oral agreement, and that the

trial court erred in finding as a matter of law that the city charter permitted the city to ratify an oral contract on the basis of a "moral obligation."

In reviewing a decision of the trial court on a Civ.R. 12(B)(6) motion to dismiss our function is identical to that of the trial court.

"In construing a complaint upon a motion to dismiss for failure to state a claim, we must presume that all factual allegations of the complaint are true and make all reasonable inferences in favor of the non-moving party. 2A Moore, Federal Practice (1985) 12–63, Paragraph 12.07[2.–5]; accord *State, ex rel. Alford, v. Willoughby Civil Serv. Comm.* (1979), 58 Ohio St.2d 221, 223, 12 O.O.3d 229, 230, 390 N.E.2d 782, 785. Then, before we may dismiss the complaint, it must appear beyond doubt that plaintiff can prove no set of facts warranting a recovery. *O'Brien v. University of Community Tenants Union* (1975), 42 Ohio St.2d 242, 71 O.O.2d 223, 327 N.E.2d 753, syllabus." *Mitchell v. Lawson Milk Co.* (1988), 40 Ohio St.3d 190, 192, 532 N.E.2d 753, 756.

In their complaint, appellants allege essentially that ordinance Nos. 946–90 and 947–90 were enacted in violation of Section 228 of the Toledo City Charter and, therefore, pursuant to Section 229 of the charter, they are void. Section 228 of the city charter requires that any contract involving an expenditure of more than $2,500 must first be authorized by the city council, must be in writing and must be executed on behalf of the city of Toledo by the city manager.

Upon consideration of, and presuming as true, those allegations set forth by appellants in their complaint and amended complaint as to the original oral agreement entered into between the City Law Director and the law firm of Calfee, Halter & Griswold, this court finds that that agreement was not made with prior approval of the city council, was not in writing and, therefore, was clearly entered into in violation of Section 228 of the city charter. As such, that agreement is void and, pursuant to Section 229 of the city charter, the city is under no obligation whatsoever to honor it. That does not necessarily mean, however, that city council's enactment of ordinance Nos. 946–90 and 947–90 does not comply with section 228 of the city charter. Ordinance No. 946–90 appropriated $100,000 and specifically authorized the expenditure of that money to pay for the " * * * fees and expenses of special counsel participating in behalf of the City's efforts" to secure the enactment of House Bill 127. Ordinance No. 947–90 authorizes the city to enter into an agreement with Calfee, Halter & Griswold to act as special counsel and represent the city in connection with the city's efforts to seek the passage of House Bill 127 and specified that the agreement was to include, among other things, the ratification of services already provided to the city by the firm.

Upon consideration of, and presuming as true, those allegations set forth by appellants in their complaint and amended complaint as to city council's passage

of ordinance Nos. 946–90 and 947–90, this court finds that council had all of the relevant information before it when it made the decision to pass the ordinances, and its action in passing the ordinances was in compliance with the requirements of the city charter.

In accordance with the foregoing, this court finds further that (1) there is no provision in the city charter which precludes council from authorizing an agreement for the performance of services after the services have been performed; (2) the claims set forth in appellants' original complaint and reraised in their amended complaint, that ordinance Nos. 946–90 and 947–90 were not lawfully enacted and are void, fail to set forth a claim for which relief can be granted; (3) the trial court did not err in granting appellees' motion to dismiss those counts; and (4) appellants' first, second and third[3] assignments of error are found not well taken.

■ In their fourth, fifth, sixth, seventh and eighth assignments of error, appellants argue that the trial court erred by failing to find that a conflict of interest arose out of Gotherman's representation of both the city of Toledo and the Ohio Municipal League and that Gotherman was required to make full disclosure of his relationship with the Ohio Municipal League to the city. Appellants assert that Gotherman failed to make such disclosure and thereby violated Canon 5[4] of the Code of Professional Responsibility, the duty of

---

3. The trial court, *in dicta*, after ruling on appellees' motion to dismiss made the following comments:

"By way of counterpoint, it should also be stressed, however, that the initial, offending agreement reached with special counsel was later ratified by a Council and an Administration markedly different politically from the Administration which initiated the transaction. This decision can be debated, to be sure, but it was not cynically political, and it was based certainly on the notion which forms the *raison d'etre* for this decision and the case law on which it is based; that is, municipal corporations ought not to be skipping out on its obligations—moral or financial—by resorting to the shield of Section 228. The purpose of Section 228, after all, is to promote open and effective government, not to defraud *unsuspecting* merchants and professionals."

This does not amount to, as appellants contend, a finding "as a matter of law, that Chapter VIII of the Charter of the City of Toledo permits the City to ratify a void oral contract on the basis of a 'moral obligation.' "

4. Appellants specifically cite DR 5–105, which provides:

"DR 5–105. Refusing to accept or continue employment if the interests of another client may impair the independent professional judgment of the lawyer.

"(A) A lawyer shall decline proffered employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, except to the extent permitted under DR 5–105(C).

"(B) A lawyer shall not continue multiple employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client, except to the extent permitted under DR 5–105(C).

undivided loyalty and the duty to exercise independent professional judgment, and that the dual representation "constituted the appearance of professional impropriety in contravention of Canon nine of the Code of Professional Responsibility." Appellants submit that contracts for legal services performed in violation of ethical standards such as this are void and unenforceable.

In the first part of this decision we found that the original oral contract between the city and the law firm of Calfee, Halter & Griswold was not valid. As to the contract that was authorized by ordinance No. 947–90, it appears clear that it was not entered into prior to the conclusion of the proceedings in the trial court due to that court's extension of the consent order of October 25, 1990 that appellees were not to enter into such contract until the court ruled on appellants' motion for preliminary injunction.

Upon consideration of the record that was before this court, we find that, as to appellants' conflict-of-interest claims, there remains no genuine issue as to any material fact and that, when construing the evidence most strongly in favor of appellants, reasonable minds can only conclude that by the time the proceedings in the trial court were concluded there was a full disclosure to the city of Gotherman's relationship with the Ohio Municipal League and any contract entered into thereafter by the city and Gotherman or the law firm would necessarily constitute a consent and waiver of objection thereto.

In accordance with the foregoing, appellees are entitled to judgment as a matter of law on the count of the amended complaint that alleged a conflict of interest and appellants' fourth, fifth, sixth, seventh and eighth assignments of error are found not well taken.

On consideration whereof, this court finds substantial justice has been done the parties complaining, and the judgment of the Lucas County Court of Common Pleas is affirmed. It is ordered that appellants pay the court costs of this appeal.

*Judgment affirmed.*

GLASSER, P.J., and MELVIN L. RESNICK, J., concur.

---

"(C) In the situations covered by DR 5–105(A) and (B), a lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each.

"(D) If a lawyer is required to decline employment or to withdraw from employment under DR 5–105, no partner or associate of his or his firm may accept or continue such employment."

APPENDIX

ORDINANCE NO. 946–90

APPROPRIATING ONE HUNDRED THOUSAND DOLLARS ($100,000.00) FROM THE UNAPPROPRIATED BALANCE OF THE PROPERTY MANAGEMENT FUND AND TRANSFERRING SAME TO THE CAPITAL IMPROVEMENTS FUND, AMENDING THE 1990 CAPITAL IMPROVEMENTS PROGRAM BY APPROPRIATING FROM THE UNAPPROPRIATED BALANCE OF THE CAPITAL IMPROVEMENTS FUND ONE HUNDRED THOUSAND DOLLARS ($100,000.00) TO ACCOUNT CODE 40–1200–3715–C00510, ENTITLED LAND LEGAL EXPENSES, AUTHORIZING THE EXPENDITURES OF MONEY TO PAY FEES AND EXPENSES IN CONNECTION WITH THE EFFORTS TO SECURE ENACTMENT OF AMENDED SUBSTITUTE HOUSE BILL 127 IN THE OHIO LEGISLATURE.

WHEREAS, this Council authorized and directed the Director of Law to seek, pursue and otherwise advance the City's effort in having Amended Substitute House Bill 127 enacted by the Ohio Legislature with the assistance of the law firm of Calfee, Halter and Griswold as special counsel; and

WHEREAS, the Director of Law, with the assistance of special counsel employed by aforesaid ordinance, has proceeded and undertaken a series of activities in pursuit of the City's effort in seeking enactment of said legislation; and

WHEREAS, sufficient funds are currently available in the Property Management Fund as a result of the transfer of certain City of Toledo-owned properties in Monclova Township to Miller Diversified; and

WHEREAS, it is and will be necessary to provide funds to pay the fees and expenses of said special counsel involved in said pursuit; NOW, THEREFORE,

Be it ordained by the Council of the City of Toledo:

SECTION 1. That there is hereby appropriated One Hundred Thousand Dollars ($100,000.00) from the unappropriated balance of the Property Management Fund to Account Code 80–1420–5810–132001 (Transfers Out) and, furthermore, that the above-identified funds be transferred into the Capital Improvements Fund, Account Code 40–1420–8690–132001.

SECTION 2. That the 1990 Capital Improvements Program be amended by appropriating from the unappropriated balance of the Capital Improvements Fund One Hundred Thousand Dollars ($100,000.00) to Account Code 40–1200–3715–C00510 (Land Legal Expenses). Said funds shall be used to pay the fees and expenses of special counsel participating in behalf of the City's efforts and

endeavors in seeking enactment of Amended Substitute House Bill 127 by the Ohio Legislature.

SECTION 3.   That the Director of Finance be and he is hereby authorized and directed to draw a warrant in the amounts certified from time to time to the Director of Finance by the Director of Law as then being properly due and payable for services rendered in connection with the activities and endeavors seeking enactment of Amended Substitute House Bill 127.   The certificate of the Director of Law shall recite that such monies are properly payable for services rendered in connection with said activities and endeavors and that such services were necessary in order to carry out Council's directive in this matter.

SECTION 4.   This Ordinance shall take effect and be in force from and after the earliest time permitted by law.

Passed:  Sept. 25, 1990 recess session;  yeas 5, nays 4.

ORDINANCE NO. 947–90

AUTHORIZING AN AGREEMENT WITH CALFEE, HALTER & GRISWOLD TO ACT AS SPECIAL COUNSEL FOR THE CITY IN CONNECTION WITH THE PASSAGE OF LEGISLATION IN THE OHIO LEGISLATURE KNOWN AS AMENDED SUBSTITUTE HOUSE BILL 127; AUTHORIZING, DIRECTING AND REQUIRING COUNSEL FOR THE CITY TO OVERSEE AND COORDINATE THE ACTIVITIES OF THE SPECIAL COUNSEL; AND DECLARING AN EMERGENCY.

WHEREAS, the City of Toledo has established economic development a major objective to promote economic growth and development in the Toledo area;  and

WHEREAS, by Ordinance 340–86, Council authorized the expenditure of $500,000 for planning for development in the Toledo area, including the acquisition and development of land for the use or development thereon of industry, commerce distribution, or research for the purpose of creating and preserving jobs in the City and improving the economic welfare of the citizens of Toledo; and

WHEREAS, by Ordinance 944–86, this Council authorized the expenditure of $12,000,000 to purchase, secure and hold for future development a portion or all of an assembly of certain parcels of land located in Monclova Township and Springfield Township;  and

WHEREAS, the City's effort to annex said certain parcels of land located in Monclova Township and Springfield Township to the City of Toledo in order for the City of Toledo to benefit from the economic growth and development of said

parcels of land have been unsuccessful to this point of time and have been abandoned; and

WHEREAS, the City of Toledo has sought and continues to seek the passage of legislation known as Amended Substitute House Bill 127, which amends Revised Code Section 715.69 and other related sections to allow a municipality or municipalities and a township or townships to enter into an agreement creating a Joint Economic Development District (JEDD); and

WHEREAS, in pursuit of passage of said legislation it is reasonable, appropriate and necessary to engage the services of legal counsel who specialize in this area; NOW, THEREFORE,

Be it ordained by the Council of the City of Toledo:

SECTION 1. That the City Manager and Director of Law are hereby authorized and directed to enter into an agreement for legal services with the firm of Calfee, Halter and Griswold as special counsel in connection with the City's efforts to seek, pursue, and otherwise advance the passage of Amended Substitute House Bill 127 in the Ohio Legislature. Said agreement shall provide for reasonable compensation for the services rendered and reimbursement of out-of-pocket expenses; and shall contain such other terms and conditions as the City Manager and Director of Law deem to be in the best interest of the City and are consistent with the objectives of the City in pursuing enactment of said legislation, including ratification of services heretofore provided to the City by said law firm.

SECTION 2. That the Director of Finance be and he is hereby authorized and directed to draw his warrant or warrants against accounting code 40–1200–3715–C00510 in payment of the obligations hereinabove authorized upon presentation of proper vouchers therefor.

SECTION 3. That the Director of Law is hereby authorized, directed and required, with the assistance of Calfee, Halter & Griswold, to pursue all proper and appropriate means to secure the enactment of legislation in the Ohio Legislature known as Amended Substitute House Bill 127.

SECTION 4. That this Ordinance is hereby declared to be an emergency measure and shall take effect and be in force immediately from and after its passage. The reason for the emergency lies in the fact that same is necessary for the immediate preservation of the public peace, health, safety and property, and for the further reason that it will promote economic development and growth to the benefit of the City of Toledo.

Vote on emergency clause:   yeas <u>9</u>, nays <u>0</u>.

Passed:  Sept. 25, 1990 recess session, as an emergency measure:   yeas <u>5</u>, nays <u>4</u>.