[Cite as *State v. Cook*, 2019-Ohio-4745.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
GALLIA COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | Case No. 18CA11 |
| Plaintiff-Appellee, | : | |
| | : | |
| vs. | : | DECISION AND JUDGMENT |
| | : | ENTRY |
| MICHAEL L. COOK, | : | |
| | : | |
| Defendant-Appellant. | : | **Released: 11/07/19** |

_____

APPEARANCES:

Timothy P. Gleeson, Gleeson Law Office, Logan, Ohio, for Appellant.

Jason D. Holdren, Gallia County Prosecuting Attorney, and Jeremy Fisher, Gallia County Assistant Prosecuting Attorney, Gallipolis, Ohio, for Appellee.

_____

McFarland, J.

{¶1} Appellant Michael L. Cook appeals from his conviction for possession of heroin and cocaine, trafficking in heroin, and tampering with evidence after a jury trial in the Court of Common Pleas for Gallia County, Ohio. Appellant asserts two assignments of error on appeal. Namely, he contends that (1) his conviction for tampering with evidence under R.C. 2921.12 is not supported by sufficient evidence, and (2) the trial court erred by referring to the substance alleged to be heroin at trial as, in fact, heroin

when explaining that it would not be placed in the jury room during deliberations for safety reasons.

{¶2} The Court sustains Appellant's first assignment of error because the evidence does not support a finding that Appellant knew an official investigation into his possession of unlawful drugs was in progress, or about to be or likely to be instituted, when he tossed a bag containing heroin and cocaine out of a state trooper's view during a traffic stop. The Court therefore reverses his conviction for tampering with evidence and vacates the sentence imposed upon that offense. The Court overrules Appellant's second assignment of error, however, because he failed to object to the alleged error below and has not shown that it caused him any prejudice.

## FACTS

{¶3} On March 19, 2015, Appellant was indicted on charges of possession of cocaine, a fifth degree felony in violation of R.C. 2925.11(A); possession of heroin, a third degree felony in violation of R.C. 2925.11(A); trafficking in heroin, a third degree felony in violation of R.C. 2925.03(A)(2); and tampering with evidence, a third degree felony in violation of R.C. 2921.12(A)(1). In February 2016, Appellant was arrested pursuant to the indictment. He entered a plea of not guilty to all charges and the trial court appointed counsel to represent him.

{¶4} The charges against Appellant arose from a traffic stop on October 10, 2014. On that date, an Ohio State Highway Patrol trooper saw Appellant driving a pickup truck with window tint darker than permitted under Ohio law. The trooper activated his overhead lights and followed Appellant into the parking lot of a Shake Shoppe restaurant. The trooper parked behind the truck and approached Appellant, who was standing beside the truck. The trooper asked Appellant for his license, registration and proof of insurance. After Appellant provided an Ohio ID card, the trooper walked to the other side of the truck to address Appellant's female passenger. While speaking to the passenger, the trooper saw Appellant "making very quick movements" and reaching into the truck's glove box. His nervous demeanor and "fumbling around" drew the trooper's attention and led him to believe that the stop might involve more than a window tint violation. The trooper, however, did not communicate this suspicion to Appellant.

{¶5} The trooper used his radio, which was situated on his left shoulder, to call in Appellant's information to the Ohio State Highway Patrol. The Patrol responded that there was a warrant for Appellant's arrest in Gallia County. Now aware of the warrant, the trooper returned his attention to Appellant and noticed that his demeanor had changed. Appellant was less frantic and his nervousness had subsided.

{¶6} The trooper asked Appellant about the warrant and why he was in Gallia County. Appellant said he was helping someone move, had bought cigarettes at another store, and was going to get something to eat. At this time, a patron leaving the Shake Shoppe alerted the trooper to a small bag lying in the parking lot between the truck and a vehicle parked beside it. The trooper retrieved the bag, which contained a "tan powdery substance" consistent with heroin. A laboratory analysis later determined the bag contained twenty-two small plastic bags of heroin and one small plastic bag of cocaine. The trooper placed the bag in the trunk of his cruiser.

{¶7} The trooper read Appellant and his passenger their Miranda rights and placed them in the back of the cruiser. He then went to see if the Shake Shoppe's security cameras captured any evidence of how the bag ended up in the parking lot. They did not provide any such evidence. The trooper then checked the video from his in-dash camera. That video showed Appellant tossing the bag into the parking lot while the trooper was speaking with Patrol on his radio. When confronted with this information, Appellant denied any involvement with the bag. After additional questioning, Appellant was placed under arrest and, ultimately, charged with the crimes in the indictment.

{¶8} This case did not proceed to trial until October 9, 2018 because Appellant failed to appear at two pretrial conferences. In both instances, Appellant was arrested pursuant to a warrant and the proceedings continued, but more than a year and a half of delay was inserted into the case.

{¶9} One of the trial court's statements to the jury is at issue in this appeal. After the trial court provided jury instructions, but just before it released the jury to deliberate, the trial court informed the jury, "The other thing I want to tell you (the jury) is that we are, for safety reasons, not going to send the heroin back with you to be handled." This statement is the basis of Appellant's second assignment of error.

{¶10} The jury returned a guilty verdict on all four counts. At sentencing, the trial court merged counts 2 and 3 for possession and trafficking in heroin, respectively. The State elected to proceed with sentencing on count 3 and the trial court sentenced Appellant as follows: 12 months for possession of cocaine, 36 months for trafficking in heroin, and 36 months for tampering with evidence. The two drug offenses are to be served concurrently to each other, but consecutively to the sentence for tampering with evidence, for a total prison term of 6 years.

{¶11} On November 14, 2018, Appellant's trial counsel timely filed notice of this appeal. On February 15, 2019, Appellant was assigned separate appellate counsel.

ASSIGNMENTS OF ERROR

"I. THE CONVICTION FOR TAMPERING WITH EVIDENCE IS NOT SUPPORTED BY SUFFICIENT EVIDENCE.

II. THE TRIAL COURT DETERMINED AN ESSENTIAL ELEMENT OF THE OFFENSE, INVADING THE PROVINCE OF THE JURY."

ASSIGNMENT OF ERROR I

{¶12} In his first assignment of error, Appellant contends his conviction for tampering with evidence is not supported by sufficient evidence. Appellant relies heavily on the Supreme Court of Ohio's decision in *State v. Straley*, 139 Ohio St.3d 339, 2014-Ohio-2139, 11 N.E.3d 1175, and this Court's analysis of that decision and others in *State v. Bradshaw*, 4th Dist. Scioto No. 17CA3803, 2018-Ohio-1105. Appellant argues that, based on the timeline of events presented by the State at trial, there was insufficient evidence to support a finding that he knew of an investigation or that an investigation was likely to be instituted into his possession of illegal drugs. In response, the State argues the cases cited by Appellant are distinguishable and that there was sufficient circumstantial evidence from

which the jury could have inferred that Cook knew he was likely to be searched for illegal drugs.

{¶13} As discussed below, the tampering with evidence statute requires a finding that, when Appellant tossed the bag of heroin, he knew that his actions would conceal evidence relevant to an existing or likely investigation. Because the State did not produce sufficient evidence for the jury to make this finding, the Court reverses the conviction for tampering with evidence.

STANDARD OF REVIEW

{¶14} A claim of insufficient evidence asks whether the evidence presented at trial is legally sufficient to support the jury's verdict as a matter of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). When reviewing this claim, we must determine whether, after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all of the essential elements of the offense proven beyond a reasonable doubt. *E.g., Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Jenks*, 61 Ohio St.3d 259, 273, 574 N.E.2d 492 (1991).

{¶15} As a reviewing court, we are not to assess "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *Thompkins*, 78 Ohio St.3d at 390 (Cook, J., concurring).  Accordingly, "[a] reviewing court will not overturn a conviction on a sufficiency-of-the-evidence claim unless reasonable minds could not reach the conclusion that the trier of fact did." *Bradshaw* at ¶¶ 14-15; citing *State v. Tibbetts*, 92 Ohio St.3d 146, 162, 749 N.E.2d 226 (2001); *State v. Treesh*, 90 Ohio St.3d 460, 484, 739 N.E.2d 749 (2001).

## LEGAL ANALYSIS

{¶16} The tampering with evidence statute provides, in pertinent part:

(A) No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall do any of the following:

(1) Alter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation;

R.C. 2921.12(A)(1).  To support a conviction for tampering with evidence, the prosecution must establish, beyond a reasonable doubt, that the defendant (1) knew "of an official proceeding or investigation in progress or likely to be instituted," (2) altered, destroyed, concealed, or removed "the potential evidence," and (3) possessed a purpose to impair "the potential

evidence's availability or value in such proceeding or investigation." *Straley*

at ¶ 11.

{¶17} The first element requires the state to establish that, at the time

of concealment, the defendant knew "of an official proceeding or

investigation in progress or likely to be instituted." *State v. Barry*, 145 Ohio

St.3d 354, 2015–Ohio–5449, 49 N.E.3d 1248, ¶ 2. "The likelihood of an

investigation is measured at the time of the alleged tampering." *State v.*

*Martin*, 2017-Ohio-7556, ¶ 110, 151 Ohio St.3d 470, 489, 90 N.E.3d 857,

881.

{¶18} R.C. 2901.22(B) defines when a person acts "knowingly." The

statute states:

> A person acts knowingly, regardless of purpose, when the
> person is aware that the person's conduct will probably cause a
> certain result or will probably be of a certain nature. A person
> has knowledge of circumstances when the person is aware that
> such circumstances probably exist. When knowledge of the
> existence of a particular fact is an element of an offense, such
> knowledge is established if a person subjectively believes that
> there is a high probability of its existence and fails to make
> inquiry or acts with a conscious purpose to avoid learning the
> fact.

"Notably, this definition does not encompass knowledge that a reasonably

diligent person should, but does not, have. Rather, the statute requires the

accused to be aware that conduct will probably cause a certain result or will

probably be of a certain nature or that circumstances probably exist." *Barry*

at ¶ 24.  Consequently, "constructive knowledge is insufficient to prove that [an accused] knew that an investigation was ongoing or likely to be commenced."  *Id*. at ¶ 25.  "Ohio law does not impute constructive knowledge of an impending investigation based solely on the commission of an offense."  *Id*. at ¶ 2.

{¶19} However, "knowledge of a likely investigation may be inferred when the defendant commits a crime that *is* likely to be reported."  *Martin* at ¶ 118 (emphasis in original).  Knowledge may be inferred in homicide cases, for example, because "[h]omicides are highly likely to be discovered and investigated" and "a jury may reasonably believe that a murderer knows this."  *Id.* at ¶ 119.

{¶20} This case does not involve a homicide, but heroin possession. In *Barry*, the Supreme Court of Ohio expressly rejected the proposition that "by concealing, transporting or possessing heroin, [the defendant] had constructive knowledge of an impending investigation into at least one of those crimes."  *Barry* at ¶ 23.  In other words, the concealing, transportation or possession of heroin is not the type of crime "that *is* likely to be reported," and therefore a jury may not infer that the perpetrator knew an investigation was forthcoming based solely on the commission of those acts.

*Martin* at ¶ 118 (distinguishing the possessory offense in *Barry* from the

commission of a homicide).

{¶21} The State argues this case is distinguishable from the Supreme

Court of Ohio's decision in *Straley*, which also involved a traffic stop that

led to the discovery of the defendant's possession of an illegal drug,

because, in that case, the traffic stop had already ceased when the defendant

attempted to conceal the drug. We previously summarized *Straley* as

follows:

> In *Straley*, the court determined that the evidence failed to show that the evidence tampered with related to the ongoing or likely investigation of which the defendant had knowledge. In *Straley*, law enforcement officers stopped the defendant's vehicle for erratic driving. Although the officers detected an odor of alcohol emanating from the defendant, they decided not to pursue an investigation. The officers would not, however, allow the defendant to drive home. As the officers tried to arrange a ride home for the defendant, the defendant announced that she needed to urinate. Afterwards, one of the officers walked to the area where the defendant had urinated and discovered a clear plastic bag covered with urine. The officer believed the bag contained crack cocaine. The officers subsequently arrested the defendant, and she later was charged with trafficking in drugs, possession of drugs, and tampering with evidence.

> Following her conviction on all counts, the defendant appealed. The court of appeals reversed the defendant's tampering with evidence conviction. The court determined that the evidence failed to show that the defendant acted with purpose to impair the value of evidence in an ongoing or likely investigation into her (1) driving under the influence of alcohol, or (2) public urination. The court concluded that the bag of drugs did not relate to a current or likely investigation.

On further appeal, the Ohio Supreme Court agreed with the appellate court's decision. The court explained that "the evidence tampered with must have some relevance to an ongoing or likely investigation to support a tampering charge." *Id*. at ¶ 16. The court further held that the evidence tampered with must relate to "the one that the defendant knows is ongoing or is likely to be instituted." *Id*.

The court applied these rules to the defendant's conviction and determined that the evidence failed "to suggest that the officers were conducting or likely to conduct an investigation into trafficking or possession of cocaine when [the defendant] discarded the baggie." *Id*. at ¶ 19. The court additionally pointed out that the "baggie of cocaine did not relate to either an ongoing investigation of driving while under the influence of alcohol or driving without a license and had no evidentiary value to a likely investigation of public urination." *Id*. The court thus concluded that the evidence failed to adequately support the defendant's tampering with evidence conviction.

*Bradshaw* at ¶¶ 57-60. The State's distinction between the concluded traffic stop in *Straley* and the active traffic stop in this case is valid. The analysis in *Straley* also demonstrates, however, that a court's inquiry into the evidence supporting a tampering with evidence conviction is fact intensive and each case is unique. The existence of an active traffic stop is just one of the facts that must be considered.

{¶22} In this case, the traffic stop was for a window tint violation, not a violation that, in the ordinary course, a reasonable person might expect to lead to an investigation into the possession of illegal drugs. The State also notes that the trooper, who had ten years of law enforcement experience,

was alerted to the possibility of other illegal activity by Appellant's nervous behavior. Even if the trooper had a well-founded suspicion that Appellant possessed illegal drugs, there is no evidence that he communicated that suspicion to Appellant before he tossed the bag of heroin. The State must prove that Appellant—not law enforcement—knew that an investigation was likely.

{¶23} There is also no evidence showing Appellant knew about the warrant for his arrest before he threw the bag. The video from the trooper's in-dash camera shows Appellant throwing the bag as the trooper was calling in Appellant's information to the State Highway Patrol. The trooper learned of the warrant during that call. The trooper could not have informed Appellant about the warrant until after that call. There is no evidence that Appellant was aware of the warrant before his conversation with the trooper.

{¶24} The State also argues the jury could have inferred Appellant's knowledge of a likely investigation based on his statements to the trooper. Specifically, when the trooper asked Appellant why he had thrown the bag, Appellant responded, "I had to get it there." The trooper understood this explanation to mean Appellant had to get the heroin to a nearby apartment complex. The State argues the statement is a tacit admission that Appellant

knew the bag contained heroin and, therefore, the jury could infer that he threw the bag in anticipation that he might be searched.

{¶25} Permitting such an inference to be sufficient under R.C. 2921.12(A)(1), however, would violate the Supreme Court of Ohio's clear instruction that "Ohio law does not impute constructive knowledge of an impending investigation based solely on the commission of an offense." *Barry* at ¶ 2. The State therefore must show the existence of facts and circumstances—in addition to the mere possession of an illegal drug—from which knowledge of an investigation or likely investigation may be inferred. In this case, the State has failed to identify such facts and circumstances to support Appellant's conviction. As a result, the Court reverses the conviction for tampering with evidence under R.C. 2921(A)(1).

ASSIGNMENT OF ERROR II

{¶26} In his second assignment of error, Appellant contends the trial court erred by determining an essential element of an offense, thus invading the province of the jury. Specifically, Appellant contends that the trial court determined that the bag tossed by Appellant contained heroin and then communicated that determination to the jury before their deliberations. Appellant suggests the trial court's statement was tantamount to an instruction that the jury must find that the bag contained heroin, which was

an essential element of the offenses of possession and trafficking of heroin. The State argues this assignment of error should be overruled because Appellant failed to object to the trial judge's statement and, in any event, never contested that the bag contained heroin at trial. The State's arguments are compelling. Appellant failed to object at trial, thereby waiving anything but plain error, which he has not shown. Appellant has not shown that he was prejudiced by the trial judge's statement. Accordingly, his second assignment of error is overruled.

## STANDARD OF REVIEW

{¶27} When "determining whether a trial judge's remarks were prejudicial, the courts will adhere to the following rules: (1) The burden of proof is placed upon the defendant to demonstrate prejudice, (2) it is presumed that the trial judge is in the best position to decide when a breach is committed and what corrective measures are called for, (3) the remarks are to be considered in light of the circumstances under which they are made, (4) consideration is to be given to their possible effect upon the jury, and (5) to their possible impairment of the effectiveness of counsel." *State v. Wade*, 53 Ohio St.2d 182, 188, 373 N.E.2d 1244, 1248–49, cert. granted, judgment vacated on other grounds, 438 U.S. 911, 98 S.Ct. 3138, 57 L.Ed.2d 1157 (1978).

{¶28} Here, the record also shows that Appellant did not object to the challenged statement by the trial judge when it was made. "The failure to object has been held to constitute a waiver of the error and to preclude its consideration upon appeal, for, absent an objection, the trial judge is denied an opportunity to give corrective instructions as to the error." *Id.* "Accordingly, any errors not brought to the attention of the trial court by objection or otherwise are waived and may not be raised on appeal unless they rise to the level of plain error." *State v. Swint*, 2018-Ohio-5384, ¶ 25.

{¶29} "To constitute plain error, a reviewing court must find (1) an error in the proceedings, (2) the error must be a plain, obvious or clear defect in the trial proceedings, and (3) the error must have affected 'substantial rights' (i.e., the trial court's error must have affected the trial's outcome)." *State v. Lewis*, *supra*, at ¶ 9; quoting *State v. Dickess*, 174 Ohio App.3d 658, 2008-Ohio-39, 884 N.E.2d 92, ¶ 31 (4th Dist.); citing *State v. Hill*, 92 Ohio St.3d 191, 749 N.E.2d 274 (2001), and *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002). "Furthermore, notice of plain error must be taken with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice." *Lewis*, *supra*; citing *State v. Landrum*, 53 Ohio St.3d 107, 111, 559 N.E.2d 710 (1990), and *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the

syllabus. "A reviewing court should notice plain error only if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.*

### LEGAL ANALYSIS

{¶30} Appellant's failure to show that he suffered prejudice as a result of the trial judge's statement undermines his assignment of error. Even accepting the argument that the statement constituted a de facto determination that the bag contained heroin, Appellant has not shown that there was any evidence from which the jury might have inferred that the bag did not contain heroin. Instead, all of the evidence in the record supports only one finding—that the bag contained both heroin and cocaine.

{¶31} The State's first witness, Jacqueline Smith, was the chemical supervisor for the Ohio State Highway Patrol Crime Lab who analyzed the contents of the bag thrown by Appellant. She testified regarding the chain of custody for the bag and the steps taken by the lab to ensure that its contents were not contaminated. Ms. Smith further testified that the lab's analysis determined the bag contained 8.396 grams of heroin and .514 grams of cocaine. Appellant's trial counsel declined to cross-examine Ms. Smith regarding her testimony. The only other evidence regarding the contents of the bag was the trooper's testimony that, in his experience, its contents

appeared consistent with heroin.  Based on this evidence, the only reasonable conclusion the jury could have reached was that the bag contained heroin and cocaine.  The trial judge's statement regarding the bag therefore did not affect the jury's consideration of this issue.

{¶32} Without a showing that the alleged error affected the trial's outcome, Appellant cannot establish plain error.  Even if Appellant's failure to object did not require plain error analysis, he has not shown any prejudice caused by the trial judge's statement.  For both of these reasons, Appellant's second assignment of error is overruled.

CONCLUSION

{¶33} In summary, the Court sustains Appellant's first assignment of error for lack of sufficient evidence, reverses Appellant's conviction for tampering with evidence under R.C. 2921.12, and vacates the sentence imposed upon that offense.  Appellant's total prison sentence is therefore reduced by 36 months.  Appellant's second assignment of error is overruled because he has not shown any prejudice from the alleged error.

**JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AND VACATED IN PART.**

## JUDGMENT ENTRY

It is ordered that the JUDGMENT BE AFFIRMED IN PART, REVERSED IN PART, AND VACATED IN PART. Court costs shall be divided equally between the parties.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Gallia County Court of Common Pleas to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Hess, J.: Concur in Judgment and Opinion.

For the Court,

BY: _____
Matthew W. McFarland, Judge

**NOTICE TO COUNSEL**
**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**