[Cite as *State v. Trout*, 2020-Ohio-3940.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
SCIOTO COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | |
| Plaintiff-Appellee, | : | Case No.  19CA3866 |
| | : | |
| vs. | : | |
| | : | |
| SHERI K. TROUT | : | <u>DECISION AND JUDGMENT</u> |
| | : | <u>ENTRY</u> |
| Defendant-Appellant. | : | |

_____

<u>APPEARANCES:</u>

Anna Villarreal, Chillicothe, Ohio, for Appellant.

Shane A. Tieman, Scioto County Prosecuting Attorney, Jay Willis, Assistant Prosecuting Attorney, Portsmouth, Ohio, for Appellee.

_____

Smith, P. J.

{¶1} Sheri K. Trout, ("Appellant"), appeals the judgment entry of the Scioto County Court of Common Pleas dated January 30, 2019.  At the close of a jury trial, Appellant was convicted of three counts of rape and one count of endangering children.  After merging several of the counts, the trial court imposed a consecutive prison sentence of eighteen years to life.  On appeal, Appellant asserts that (1) the trial court abused its discretion in finding the minor child victim competent to testify at trial; (2) trial counsel was ineffective for failing to submit proposed questions prior to the child

victim's competency hearing; (3) trial counsel was ineffective for failing to cross-examine eight of the State's witnesses; and (4) the evidence at trial was insufficient or in the alternative the conviction was against the manifest weight of the evidence.  Upon review, we find no merit to any of Appellant's assignments of error.  Accordingly, all assignments of error are overruled and the judgment of the trial court is affirmed.

FACTS AND PROCEDURAL HISTORY

{¶2} On February 28, 2018, Appellant and Brian E. Powers were jointly indicted as follows:

Count One, Rape, R.C. 2907.02(A)(1)(b), 2907.02(B), a felony of the first degree;

Count Two, Illegal Use of Minor in Nudity-Oriented Material or Performance, R.C. 2907.323(A)(3), 2907.323(B), a felony of the fifth degree;

Count Three, Rape, R.C. 2907.02(A)(1)(b), 2907.02(B), a felony of the first degree;

Count Four, Rape, R.C. 2907.02(A)(1)(b), 2907.02(B), a felony of the first degree;

Count Five, Kidnapping, R.C. 2905.01(A)(4), 2905.01(C)(1), a felony of the first degree;

Count Six, Kidnapping, R.C.2905.01(A)(4), 2905.01(C)(3), a felony of the first degree;

Count Seven, Endangering Children, R.C. 2919.22(A), 2919.22(E)(2)(c), a felony of the third degree; and,

Count Eight, Intimidation of an Attorney, Victim, or Witness in a Criminal Case, R.C. 2921.04(B)(1), 2921.04(D), a felony of the third degree.[1] The alleged victim, A.C., is Appellant's granddaughter. A.C. was four years old at the time of the alleged crimes. Powers, the co-defendant, was Appellant's boyfriend. The allegations of sexual misconduct came to light when A.C.'s father, Brian Carver, and her step-mother, Michelle Carver, took her to the emergency room for an unrelated medical condition.

{¶3} Appellant was subsequently served with the indictment, arraigned, and appointed counsel. The matter was scheduled for a jury trial and continued several times. The State filed several motions, including a motion to consolidate the defendants' cases for purposes of trial; a motion permitting the State of Ohio to provide the testimony of the minor victim via closed-circuit television; and a memorandum regarding introduction of hearsay in child abuse cases. Defense counsel also filed a Memorandum Contra to State's Motion to Consolidate; a motion to dismiss based on

---

[1] Appellant was not joined as to Counts Two and Eight. Several counts also contained specifications for Powers as a sexually violent predator.

failure to provide discovery; and a motion to dismiss based on speedy trial violations.

{¶4} On September 25, 2018, the trial court held a hearing in chambers to determine the issue of A.C.'s competence to testify. The trial court found A.C. to be a competent witness.

{¶5} The matter proceeded to trial. The prosecution's theory of Appellant's guilt was through her complicity to Powers' acts of sexual abuse. A court order issued from the Scioto County Common Pleas Court, Juvenile Division, dated April 21, 2017, contained provisions modifying Appellant's visitation with A.C. In particular, the order contained provisions explicitly stating that: (1) Hannah Giles, A.C.'s mother, had no visitation privileges; and, (2) Brian Powers was not to be present for any visits. The prosecutor argued that Appellant was complicit with Powers' criminal conduct by failing to comply with the juvenile court's order and permitting Powers to be present in her home when A.C. visited. The State of Ohio presented 16 witnesses, including A.C.

{¶6} The following facts were introduced into evidence at trial: On July 20, 2017, Brian Carver left A.C. at Appellant's house pursuant to the visitation order. The next morning, Alice Hamilton, Appellant's mother, appeared at Carver's home with A.C. She informed Carver that Appellant

and Powers had gotten into an argument and "it was just best that [A.C.] came home. A.C. had bug bites on her legs.

{¶7} Later in the day, Brian and Michelle Carver took A.C. to Mercy Urgent Care to have the bug bites examined. According to Brian Carver, when the doctor left the room, A.C. put her hand on her breast and vaginal area. She had never done that before. When she was asked what was wrong, A.C. turned white. She appeared scared and upset. Then A.C. told them, "Peter does that to [me]." Michelle Carver recalled the revelation slightly differently. She testified that when the doctor stepped out, A.C. told them that they were "playing doctor and Peter hurt me. He touched me down there." Michelle Carver left the room, found the doctor, and advised that they thought A.C. had been molested. Carver further testified that after the allegations surfaced, A.C. exhibited turbulent behavior such as crying, hiding, and having tantrums in their home.

{¶8} The Carvers were advised to take A.C. to Southern Ohio Medical Center's (SOMC) Emergency Room. SOMC called the Portsmouth Police Department and Detective Michael Hamilton arrived to interview A.C. From there, the Carvers were advised to take A.C. to Adena "where they specialized in sexual assault."

{¶9} At Adena, A.C. was examined by Ashley King, a SANE[2] nurse who collected the rape kit evidence from A.C. Ms. King specifically remembered A.C. and the difficulty of performing the physical examination. A.C. was scared and crying hysterically. At one point, A.C. sat up, looked at King and said, "That's why I popped up when he did it, because it hurt so bad." King testified there was redness in the vaginal area; abrasions, redness, and swelling; redness and swelling down into the rectal area; and a "beefy red and swollen" hymen. The Carvers and A.C. were referred to the Child Protection Center in Ross County, Ohio for further evaluation.

{¶10} At the Child Protection Center, Ashley Muse-Gigley, another SANE nurse, interviewed A.C. and recorded the interview, which was played for the jury. Dr. Zoran Naumvoski, a director at the Child Protection Center, testified he interviewed A.C. two weeks later. In speaking with A.C., she told Dr. Naumvoski that "Pappaw Brian hurt her." Upon doing so, A.C. immediately pointed to her genital area.

{¶11} In addition to the specifics of the abuse as reported, A.C. testified that "Peter" wasn't real. * * * Brian Powers told [me]to say that." A.C. testified she told the lie "because he told me to."

---

[2] Sexual Assault Nurse Examiner.

{¶12} Cynthia Justice testified she treated A.C. from August 2017 to June 2018. She diagnosed A.C. with post-traumatic stress disorder. Although Justice was aware of the allegations of child abuse, she did not learn of them from A.C. until March 16, 2018, during a home visit. Justice read from her therapy note of that date as follows:

> While discussing her daily activities she blurted out details - - details of the alleged sexual abuse by grandmother's boyfriend. She stated, I yelled for Sheri to help and she came in and told me - - or told him, referring to Brian Powers, as she called him by name, to get off my daughter, referring to self, this is in parenthesis [sic], or I will smack you in the face. He once busted the bathroom door. He came back and made her bleed. She called the cops. She protected me.

{¶13} In addition to witness testimony, the State offered 34 exhibits which were admitted into evidence, including: the juvenile court's entry; medical records of A.C. from Adena Health System, the Child Protection Center, and Mahajan Therapeutics; A.C.'s rape kit; oral swabs; the interview of A.C. from the Child Protection Center; a DNA analysis report from the Ohio Bureau of Criminal Investigation ("BCI"); photographs of Appellant's home; and chain of custody forms from the Portsmouth Police

Department and BCI.  At the close of trial, Appellant was convicted of three

counts of rape, R.C. 2907.02(A)(1)(b) and one count of endangering

children, R.C. 2919.22(A)/R.C. 2919.22(E)(2)(c).

{¶14} The trial court stated as follows:

[T]he defendant has been convicted by the jury of **Count 1:**

**Rape, in violation of Ohio Revised Code Section**

**2907.02(A)(1)(b), a felony of the first degree.**  The Jury

further found, beyond a reasonable doubt, that the victim was

**under the age of ten (10).  Count 3: Rape, in violation of**

**Ohio Revised Code Section 2907.02(A)(1)(b), a felony of the**

**first degree.**  The Jury further found, beyond a reasonable

doubt, that the victim **was under the age of thirteen (13), and**

**resulting in serious physical harm.  Count 4: Rape, in**

**violation of Ohio Revised Code Section 2907.02(A)(1)(b), a**

**felony of the first degree.**  The Jury further found, beyond a

reasonable doubt, that the victim **was under the age of**

**thirteen (13), and force or threat of force.  Count 7:**

**Endangering Children, in violation of Ohio Revised Code**

**Section 2919.22(A), 2919.22(E)(2)(c), a felony of the third**

**degree.** The Jury further found, beyond a reasonable doubt,

**resulting in serious physical harm.**

The trial court then sentenced Appellant to fifteen years to life on Count 1

rape. The court further found that Counts 3 and 4, also rape, merged with

Count 1. Appellant was sentenced to a thirty-six month prison term on

Count 7, Endangering Children. Appellant's consecutive sentence was a

total aggregate prison term of 18 years to life.

{¶15} This timely appeal followed. Where pertinent, additional facts

are set forth below.

## ASSIGNMENTS OF ERROR

"I. THE TRIAL JUDGE ABUSED HIS DISCRETION IN
FINDING A.C. COMPETENT TO TESTIFY AT TRIAL.

II. TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING
TO SUBMIT PROPOSED QUESTIONS PRIOR TO A.C.'S
COMPETENCY HEARING. THIS FAILURE PREJUDICED
APPELLANT, AFFECTED THE OUTCOME OF THE
COMPETENCY HEARING, AND AFFECTED THE
OUTCOME AT TRIAL.

III. TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING
TO CROSS-EXAMINE EIGHT OF THE SIXTEEN
WITNESSES PRESENTED BY THE STATE, INCLUDING
A.C. THIS FAILURE UNFAIRLY PREJUDICED
APPELLANT, AND UNDERMINED THE RESULT AT
TRIAL.

IV. THE EVIDENCE WAS INSUFFICIENT AS A MATTER
OF LAW TO CONVICT APPELLANT OF RAPE AND
CHILD ENDANGERMENT; OR IN THE ALTERNATIVE

THE CONVICTION WAS AGAINST THE MANIFEST
WEIGHT OF THE EVIDENCE."

ASSIGNMENT OF ERROR ONE -
WITNESS COMPETENCY

A. STANDARD OF REVIEW

{¶16} " 'A determination of competency is within the sound discretion of the trial court and will not be reversed on appeal absent a clear abuse of discretion.' " *State v. Hammond*, 4th Dist. Ross No. 18CA3662, 2019-Ohio-4253, at ¶ 36, quoting, *State v. Maxwell, 139* Ohio St. 3d 12, 2014-Ohio-1019, 9 N.E. 3d 390, at ¶ 100. An abuse of discretion is more than an error of law or of judgment. Instead, it implies that the court acted in an unreasonable, arbitrary or unconscionable manner. *See*, e.g., *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983); *Wilson v. Wilson,* 4th Dist. Lawrence No. 19CA1, 2009-Ohio-4978, at ¶ 17.

B. LEGAL ANALYSIS

{¶17} Appellant asserts that A.C., age four at the time of the alleged sexual conduct, did not have an ability to accurately receive, recollect, and communicate information. Furthermore, it is asserted that even when A.C. testified at age five at the competency hearing, and at age six by the time of trial, she was not able to appreciate the heavy responsibility and weight of the oath. Appellant asserts the trial court failed

to make the minimum required determination and unreasonably and arbitrarily found A.C. competent to testify. Appellant argues the record reflects only 13 pages of testimony (which was "small talk" or brief answers), and argues that the trial court did not ask sufficient questions regarding the consequences for telling lies under oath. Appellant concludes this decision amounted to an error of law and constitutes an arbitrary and unreasonable abuse of discretion.

{¶18} The trial court found as follows:

The Court finds that the child victim is under ten years of age. The child was interviewed, on the record, in chambers, without the presence of the Defendant, Counsel for the Defendant, or the State. This Court, prior to the interview, invited the submission of proposed questions. Proposed questions were not submitted by the Defendant or the State. The Court finds upon reviewing the briefs of counsel and considering the child's interview by this Court, that the child victim is competent to testify at trial. The Court further finds that the child victim has the ability to receive accurate impressions of fact, has the ability to accurately recollect the impressions, and has the ability to relate the impressions truthfully.

{¶19} R.C. 2317.01 provides that, "All persons are competent witnesses except those of unsound mind and children under ten years of age who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly." Evidence Rule 601 also provides the general rule governing the competency of witnesses. *Hammond, supra,* at ¶ 36. It states, in relevant part, "[e]very person is competent to be a witness except: (A) ... children under ten years of age, who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly." Evid.R. 601(A). "A trial court must conduct a voir dire examination of a child under ten years of age to determine the child's competence to testify." *Maxwell, supra,* at ¶ 100. The court must consider the following factors in making this determination:

> (1) the child's ability to receive accurate impressions of fact or to observe acts about which he or she will testify; (2) the child's ability to recollect those impressions or observations; (3) the child's ability to communicate what was observed; (4) the child's understanding of truth and falsity; and, (5) the child's appreciation of his or her responsibility to be truthful.

*Id.*; citing *State v. Frazier*, 61 Ohio St.3d 247, 251, 574 N.E.2d 483 (1991).

{¶20} At the hearing to determine A.C.'s competence to testify, the trial court inquired as follows:

| | |
|---|---|
| The Court: | Okay. Now, I don't want you to tell me about anything that happened, but what I want to know is, do you know what it is to tell the truth? Do you know what that means? |
| Minor Female: | Yes. |
| The Court: | Do you know what it means to tell a lie? |
| Minor Female: | Yes. |

\*\*\*

| | |
|---|---|
| The Court: | Now, if I took this file here - - this is - - this is - - it's called a file, and told you that file is red would I be telling you the truth? |
| Minor Female: | No. |
| The Court: | Would I be telling you a lie? |
| Minor Female: | Yes. |
| The Court: | I would? |
| Minor Female: | Yes. |

The Court:          Okay.  That's not red?

Minor Female:     Nope.

The Court:          Okay.  Are you sure?

Minor Female:     Yes. It's not.

The Court:          All right.  If I told you right now it - - it was - - it's

dark outside is that the truth or a lie?

Minor Female:     A lie.

    * * *

The Court:          Okay.  If I told you my shoe was brown is that the

truth?

Minor Female:     Yes.

The Court:          Okay.  If I said your shoes are brown is that the

truth?

Minor Female:     No.

    * * *

The Court:          Okay.  All right.  Okay.  Now, do you know that

you're not supposed to tell lies?

Minor Female:     Yes, I know.

    * * *

The Court:        Okay.  Would you ever lie to anybody about anything that ever happened to you?

Minor Female:     No.

The Court:        Okay.  All right.  Have you ever lied about anything that had ever happened to you?

Minor Female:     I never lie.

          * * *

The Court:        Okay.  So, at some time probably, you're going to be asked some questions about what happened to you.  Do you understand that?  Do you know - - what are you supposed to do when you're asked those questions?  Do you know what you're supposed to do?

Minor Female:     Yes.

The Court:        What?

Minor Female:     Tell the truth.

The Court:        Tell the truth.  Can you do that?

Minor Female:     Um hmmm.

The Court:        I think you know the difference between the truth - - a truth and a lie, don't you?

Minor Female:      Uh huh.

{¶21} Appellant argues that the trial court failed to focus on the consequences for telling lies under oath.  The transcript does reveal the trial court's failure to ask an explicit question relating to the consequences for lying and the meaning of the oath.  We also observe that after the trial court found A.C. competent to testify, neither defense counsel interposed an objection after the court issued its ruling, prior to A.C.'s testimony, or at any point during the trial.

{¶22} " 'Any errors not brought to the attention of the trial court by objection or otherwise are waived and may not be raised on appeal unless they rise to the level of plain error.' " *State v. Cook,* 4th Dist. Gallia No. 18CA11, 2019-Ohio-4745, at ¶ 28, quoting, *State v. Swint,* 2018-Ohio-5384, ¶ 25.  "To constitute plain error, a reviewing court must find (1) an error in the proceedings, (2) the error must be a plain, obvious or clear defect in the trial proceedings, and (3) the error must have affected 'substantial rights' (i.e., the trial court's error must have affected the trial's outcome)." *Cook, supra*, at ¶ 29,  quoting *State v. Dickess*, 174 Ohio App.3d 658, 2008-Ohio-39, 884 N.E.2d 92, ¶ 31 (4th Dist.); citing *State v. Hill*, 92 Ohio St.3d 191, 749 N.E.2d 274 (2001), and *State v. Barnes,* 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002).  "Furthermore, notice of plain error must be taken with

the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice." *State v. Landrum*, 53 Ohio St.3d 107, 111, 559 N.E.2d 710 (1990), and *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus. "A reviewing court should notice plain error only if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id*. Based upon our review of this case, we find the trial court did not commit plain error in finding A.C. competent to testify.

{¶23} The competency hearing transcript reveals that A.C. answered questions which demonstrated an ability to receive accurate impressions of fact, an ability to recollect impressions and observations, and the ability to communicate her knowledge. A.C. was able to tell the trial court her full name, the month and day of her birth, street of residence, parents' names, grade in school, name of school, teacher's name, and siblings' names. She testified she liked to eat, watch television, and play outside. The record does not reveal an inordinate use of leading questions or that A.C. was unable to recollect or communicate her answers. While the judge gave A.C. a couple pieces of candy, nothing indicates this was used to "reward" her for "correct" answers to questions.

{¶24} While we agree that the trial court could have asked explicit questions regarding her understanding of negative consequences for lying or her understanding of the oath, we find that A.C.'s answers implicitly demonstrate that she understood there may be negative consequences for lying. For instance, after being asked "Would you ever lie?" and a follow-up, "Have you ever lied?" A.C. answered: "I never lie." Additionally, " '[t]he child's appearance, fear or composure, general demeanor and manner of answering, and any indication of coaching or instruction as to answers to be given are as significant as the words used in answering during the examination to determine competency.' " *State v. Azbell,* 5th Dist. Fairfield No. 04CA11, 2005-Ohio-1704, at ¶ 21, quoting, *State v. Wilson,* 156 Ohio St. 525, 103 N.E.2d 552 (1952). *See also State v. Mayer,* 4th Dist. Highland No. 99CA8, 200-Ohio-2014, at *2. As to the above-referenced indicators, the trial court was in the best position to observe A.C.'s demeanor and manner of answering. *See also State v. Cobb,* 81 Ohio App.3d 179, 182, 610 N.E.2d 1009 (9th Dist.1991), (Trial court is in a far better position to determine the competency of a child witness, particularly in light of the child's testimony at trial.)

{¶25} This conclusion is further bolstered by A.C.'s testimony at trial. The trial transcript reflects that after being given the oath, the prosecutor

asked A.C.: "Do you know what that means?  A.C. replied "No."

Thereafter, the following exchange occurred:

> Q:    Okay.  The Judge is asking you to tell the truth in here.
>
> Okay.
>
> A:    Um hmm.
>
> Q:    Do you know what that - - what it means to tell the truth?
>
> A:    Yes.
>
> Q:    What does that mean?
>
> A:    You tell the truth and don't lie.
>
> Q:    Okay.  What happens if you tell a lie?
>
> A:    You get grounded.
>
> Q:    You get grounded. Okay.  So, if I told you my hair is hot
>
> pink right now would that be the truth or a lie?
>
> A:    A lie.
>
> Q:    That would be a - - it's not pink?
>
> A:    No.

{¶26} A.C.'s answers above demonstrate an awareness of the negative

consequences for lying.  In *State v. Lee*, 90 Ohio App. 3d 282, 459 N.E.2d

910 (9th Dist.1983), the trial court found that the child's inability to define

"oath" was not dispositive of the question of her competency in light of her

testimony at trial. *See also, State v. Larie*, 5th Dist. Licking No. 96CA51, 1996 WL 753171 (Dec. 16, 1996), at *2, wherein the appellate court found that certain dialogue on truthfulness and what it means to be truthful fulfilled the requirement regarding the meaning of the oath.

{¶27} Appellant has directed us to A.C.'s cross-examination, where counsel for Brian Powers inquired as follows:

Q:     Do you remember a year and a half ago back in July when all this was supposed to happen?

A:     No.

Q:     NO.

A:     Huh uh.

Q:     You don't remember that?

A:     No.

Q:     Well, the reason I asked, is Julie asked you if you remembered the Judge and you said you didn't. This summer you would have gone into his office and talked with him a little bit, told him about Teen Titans. Does that sound familiar?

A:     No.

Later during cross-examination:

Q:     Okay.  They took you to a doctor and you talked to a

       nurse lady - -

A:     Yes.

Q:     - - in a room with a little table?

A:     Yeah.

Q:     Do you remember talking with her?

A:     No.

Q:     Okay.  So, if I play a little video of that would that help

       you remember?

A:     Yeah.

{¶28} We do not find A.C.'s inability to recall certain past details as fatal.  In *State. V. Lee,* 90 Ohio App.3d 282, 459 N.E.2d 910 (9th Dist.1983), the appellate court found that the child victim's inability to accurately assign a date to past events did not hinder her ability to competently render testimony, as the date of the offense, material to conviction, was testified to by other witnesses.  *Id*. at 282.  In this case, co-defense counsel played the video of A.C. speaking with SANE nurse Ashley Muse-Gigley, and actually rehabilitated A.C.'s testimony as follows:

Q:     Okay.  [A.C.], do you remember that?

A:     Yeah.  Now I do.

{¶29} "When determining a child's reasoning ability, as when determining a child's competency, '[a] trial court is not required * * * to make express findings on the considerations outlined in *Frazier*. * * * Instead, the trial court is merely required to consider the *Frazier* factors while making the * * * determination.' " *State v. Rizer,* 4th Dist. Meigs No. 10CA3, 2011-Ohio-5702, at ¶ 21, quoting, *Schulte v. Schulte,* 71 Ohio St.3d 41, 43, 641 N.E.2d 719 (1994). *See also Wilson v. Wilson,* 4th Dist. Lawrence No. 09CA1, 2009-Ohio-4978, at ¶ 16. In the absence of evidence to the contrary, we presume that the trial court properly applied the *Frazier* factors and that it did not abuse its discretion or commit plain error by finding A.C. to be competent as a witness despite her young age.

{¶30} Based on the foregoing, we find no merit to Appellant's first assignment of error. Though not explicitly stated in terms of consequences, A.C. was able to recall, recognize, and communicate a negative consequence for untruthfulness, i.e. "you get grounded." Our conclusion is further bolstered by A.C.'s direct examination testimony at trial. As such, we overrule the first assignment of error.

### ASSIGNMENTS OF ERROR TWO AND THREE- INEFFECTIVE ASSISTANCE OF COUNSEL

### A. STANDARD OF REVIEW

{¶31} To prevail on a claim of ineffective assistance of counsel, a criminal defendant must establish (1) deficient performance by counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *State v. Wilson,* 4th Dist. Lawrence No. 18CA15, 2019-Ohio-2754, at ¶ 25; *State v. Short*, 129 Ohio St.3d 360, 2011-Ohio-3641, 952 N.E.2d 1121, ¶ 113; *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  In Ohio a properly licensed attorney is presumed competent.  *State v. Gondor,* 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 62.  Thus, in reviewing the claim of ineffective assistance of counsel, we must indulge in "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy,' "  *Wilson, supra,* quoting *Strickland* at 697, 104 S.Ct. 2052.  Failure to satisfy either part of the test is fatal to the claim.  *Id.*; *State v. Bradley*, 42 Ohio St.3d 136, 143, 538 N.E.2d 373 (1989); *State v. Ruble*, 2017-Ohio-7259, 96 N.E.3d 792, ¶ 47 (4th Dist.).

## B. LEGAL ANALYSIS

1.   Was defense counsel ineffective for failing to submit proposed
     questions prior to A.C.'s competency hearing?

{¶32} R.C. 2317.01, set forth above, also provides that the

court may allow the prosecutor, guardian ad litem, or attorney for any party

to submit questions for use by the court in determining whether a minor

child is a competent witness.  Appellant asserts that trial counsel failed to

submit any proposed questions prior to the competency hearing and thereby

prejudiced Appellant and affected the outcome of the competency hearing,

which in turn affected the outcome of the trial.  Appellant asserts that had

trial counsel submitted proposed questions, the trial judge could have been

directed to the minimum determinations he needed to make in order to find

A.C. competent or to the shortcomings of her competency.

{¶33} Appellant argues that had questions been submitted, A.C.

would likely not have been found competent to testify.  Appellant concludes

that by not eliminating A.C. as a witness, watching the six-year-old child

testify via closed-circuit television had an effect on the jurors and the

outcome of the trial.  For the reasons which follow, we disagree.

{¶34} Neither defense counsel for Appellant, counsel for co-

defendant Powers, nor the State of Ohio submitted proposed questions for

the trial court.  In *State v. Cobb, supra,* the appellate court noted the

provision for submission of questions pursuant to R.C. 2317.01 and also

observed that the statute does not require the trial court to use these questions. Our research has yielded no authority to the contrary.

{¶35} Given that the trial court had discretion whether or not to utilize proposed questions, we find it to be pure speculation to conclude that defense counsel's failure to submit proposed questions constituted deficient performance or otherwise affected the outcome of the competency hearing and the outcome of the trial. As explained above, the record reflects that at the competency hearing, A.C. testified "I never lie." At trial, the prosecutor asked her if she understood the oath and began a dialogue regarding truthfulness and untruthfulness. A.C. was able to articulate the negative consequences for untruthfulness, which in her experience was, "You get grounded."

{¶36} Based on the foregoing, we find Appellant failed to satisfy either prong of the *Strickland* test necessary to support a claim of ineffective assistance of counsel for counsel's failure to submit proposed questions. As such we find no merit to Appellant's argument herein.

2. Was defense counsel ineffective for failing to cross-examine eight of the State's sixteen witnesses presented at trial?

{¶37} Appellant also asserts counsel was ineffective for failing to cross-examine eight of the witnesses at trial, including A.C. Appellant argues counsel failed to call into question these witnesses' testimony,

competency, or motives. Appellant concludes that trial counsel did not take an active role and that this was not a tactical decision but instead, the omission fell below the standard of reasonable representation. For the reasons which follow, we again disagree.

{¶38} "Generally, '[t]he extent and scope of cross-examination clearly fall within the ambit of trial strategy, and debatable trial tactics do not establish ineffective assistance of counsel.' " *State v. Guysinger,* 4th Dist. Ross No. 15CA3514, 2017-Ohio-1167, at ¶ 27, quoting, *State v. Leonard,* 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 146. Moreover, " '[a]n appellate court reviewing an ineffective assistance of counsel claim must not scrutinize trial counsel's strategic decision to engage, or not engage, in a particular line of questioning on cross-examination.' " *State v. Dorsey,* 10th Dist. Franklin No. 04AP-737, 2005-Ohio-2334, ¶ 22, quoting *In re Brooks,* 10th Dist. Franklin No. 04AP164, 2004-Ohio-3887, ¶ 40; *see also State v. Allah,* 4th Dist. Gallia No. 14CA12, 2015-Ohio-5060, ¶ 23. In this case, the State of Ohio called sixteen witnesses. The witnesses were presented at trial as follows:

1. Brian Carver, A.C.'s father;

2. Andrea Crace, a staff nurse at Adena Health System and part-time coordinator of SANE nurses;

3. Ashley King, a registered nurse at Adena Health System and a trained SANE nurse;

4. A.C.;

5. Dr. Zoran Naumvoski, a medical doctor and administrative director of the Child Protection Center;

6. Michelle Carver, A.C.'s step-mother;

7. Ashley Muse-Gigley, the SANE nurse, interviewer and victim's advocate at the Child Protection Center who interviewed A.C.;

8. Detective Michael Hamilton, PPD;

9. Detective Steve Brewer, PPD;

10. Valerie Pinson, Records Clerk, PPD;

11. Officer Lee Bower, PPD;

12. Timothy Augsback, a forensic scientist employed by BCI;

13. Dylan Waggy, a computer forensic specialist employed by BCI;

14. Rachel Gray, a case worker and investigator with Scioto County Children's Services;

15. Detective Chuck Crapyou, PPD, who investigated the case; and,

16. Cynthia Justice, a Licensed Independent Social Worker who provided therapy to A.C. at Mahajan Therapeutics and at A.C.'s home.

{¶39} The transcript reveals that Appellant's trial counsel cross-examined Brian Carver, Ashley King, Dr. Naumvosi, Michelle Carver, Ashley Muse-Gigley, Rachel Gray, Detective Crapyou, and Cynthia Justice. As indicated above, the prosecution pursued a theory of complicity based on Appellant's failure to abide by the court order which did not permit Powers to be in her home when A.C. was present, thus giving Powers access to A.C. In defense counsel's cross-examination of Brian Carver, Appellant's counsel was able to elicit testimony wherein Carver admitted that there were times when he left A.C. at Trout's home for visitation, knowing that Brian Powers was present in the home. This testimony may have served to lessen the impact of Appellant's failure to abide by the court order by demonstrating A.C.'s father was also lax as to the terms of the court order.

{¶40} On cross-examination, Appellant's counsel also elicited testimony wherein Carver admitted that he could not remember certain information, such as which law enforcement agency showed up at the E.R. to take a report; the name of A.C.'s therapist; the name of the person who examined A.C. at Adena E.R.; and where the Child Protection Center was

located. All of this testimony could have cast doubt as to Carver's parenting skills and as to the reliability of his testimony as to other material facts.

{¶41} Appellant's counsel was also able to get Carver to admit that he and his wife Michelle, not A.C., did much of the explaining to the E.R. doctor, casting doubt on the allegations of sexual abuse. Appellant's counsel was also able to emphasize uncomplimentary facts through Carver's cross-examination. Carver testified that A.C.'s mother Hannah, whom Carver chose to be in a relationship with at one time, was on drugs; that she was many years younger than Carver; and that Carver and his current wife, Michelle, together received SSI, disability, and government financial assistance for A.C. and an older child, Breanne. This cross-examination appears to have been vigorous at times.

{¶42} Appellant's counsel also cross-examined Dr. Naumvoski, focusing on the Child Protection Center records. Counsel was able to elicit testimony again demonstrating that the history and circumstances of suspected abuse was obtained from A.C.'s father. Counsel emphasized Dr. Naumvoski's note in the records that two weeks after intake at the hospital, A.C.'s physical examination was normal, possibly attempting to create reasonable doubt as to the required element of "serious physical harm."

{¶43} On cross-examination of Michelle Carver, A.C.'s step-mother, Appellant's counsel was able to emphasize that A.C.'s mother had obtained visitation rights and that the Carvers had a contempt motion filed against them by the mother. Counsel also elicited testimony about the on and off again nature of the Carvers' relationship, and the fact they married just one week after the allegations of sexual abuse surfaced. Counsel's relentless questioning also caused Michelle Carver confusion as to when A.C. first reported "Papaw Brian" as the perpetrator—either at Adena or the SOMC E.R. The testimony adduced had the potential to damage Michelle Carver's credibility.

{¶44} On cross-examination of Ashley Muse-Gigley, the interviewer and victim's advocate who interviewed A.C., Appellant's counsel was able to elicit many "I don't know" or "I don't recall" answers. On cross-examination of Rachel Gray, the Children's Services caseworker, counsel was able to emphasize Gray's previous testimony on direct that A.C. had told Gray she was sorry for "fibbing." This testimony could have damaged the credibility of A.C.

{¶45} On cross-examination of Detective Crapyou, counsel elicited testimony that he received "unsolicited" phone calls from Michelle Carver wherein she misrepresented her name and marital status. The detective also

testified it was through a July 24, 2017 call from Michelle Carver that Brian Powers' name first emerged as perpetrator. Counsel also elicited testimony that Powers was first arrested on an unrelated incident of domestic violence with Appellant as the victim on July 29, 2017.

{¶46} Appellant's counsel further elicited testimony from Detective Crapyou that Appellant had been cooperative with him and she had provided the Playstation piece of evidence.[3] Detective Crapyou agreed with defense counsel on cross-examination that if it wasn't for Appellant, "it [the Playstation] wouldn't be here today." All this testimony had the potential of placing Appellant in a sympathetic light as another victim of Brian Powers. It also demonstrated at least some degree of cooperation with law enforcement.

{¶47} Finally, Appellant's counsel also cross-examined Cynthia Justice, A.C.'s therapist. During cross-examination, counsel was able to emphasize the frequency of Justice's sessions with A.C.; the fact that one of the Carvers was always present during therapy; and the fact that, not until the 30th session did A.C. "blurt out" allegations of sexual abuse. Justice could not testify with accuracy how many sessions she had, and she also admitted that Michelle Carver was the main source of her information.

---

[3] Again, Powers was charged with illegal use of a minor in nudity-oriented material or performance. The Playstation which Appellant provided to Detective Crapyou was used solely in the case presented against Powers for the illegal use of a minor charge.

Counsel also emphasized a note in the Mahajan Therapeutics records where A.C. told Justice that Appellant "protects her."  Our review reveals these individual cross-examinations, including Justice's, appear to have been thoughtfully-planned, appropriate, and vigorous where necessary.

{¶48} As to the other witnesses which Appellant's counsel chose not to cross-examine, we find this to be a matter of trial strategy and not indicative of deficient performance.  This is especially compelling in light of the above discussion of the cross-examination of the witnesses defense counsel *did* choose to cross-examine, as set forth above.  We begin with A.C., age 6 at the time of trial.  In *Guysinger, supra,* we stated at ¶ 29:

> In light of the very sensitive nature of this case, which involves a child victim of sexual assault, counsel's decision not to extensively cross-examine A.G. does not, by itself, constitute ineffective assistance of trial counsel.  *See*, e.g., *State v. Hughes*, 10th Dist. Franklin No. 14AP-360, 2015-Ohio-151, ¶ 60 (trial counsel's failure to cross-examine any of the state's witnesses, including the child victim, in a case involving rape and gross sexual imposition, did not constitute ineffective assistance, reasoning that "[t]rial counsel's decision not to cross-examine N.P. and F.H., both minors, is a reasonable and

understandable trial tactic given the sensitive nature of this case"); *State v. Diaz*, 9th Dist. Lorain No. 04CA008573, 2005-Ohio-3108, ¶ 20-23 (trial counsel's decision not to cross-examine child victims in case involving rape and gross sexual imposition was within the realm of sound trial strategy and did not constitute ineffective assistance of counsel).

{¶49} In *Guysinger*, supra, we also discussed various reasons supporting the tactical decision to conduct a very brief cross-examination of the child-victim.

Trial counsel could have been wary about a contentious cross-examination of A.G., who had testified emotionally on direct examination. A more rigorous cross-examination could evoke more emotion and greater sympathy by the jury. * * * Moreover, it is not at all clear that additional questioning of A.G. would have necessarily resulted in favorable testimony concerning the details of the offenses and her reason for not reporting the crimes earlier than she did. A.G. testified on direct examination that she did not report the crimes because she was scared. Additional cross-examination on these matters may have simply bolstered the state's case. *See State v.*

*Freeman,* 8th Dist. Cuyahoga No. 92809, 2010-Ohio-3714, ¶ 51 (decision not to cross-examine child victims of rape and gross sexual imposition about why they failed to come forward with their allegations sooner did not constitute ineffective assistance when they explained this on direct examination because "[i]t would have been foolish for defense counsel to re-elicit this damning testimony and explanations from the children on cross-examination").

{¶50} In this case, A.C. was cross-examined by counsel for Appellant's co-defendant, Brian Powers. Powers' counsel elicited testimony from A.C. that she had been friends for a while with the female prosecutor; that she did not remember a year and a half ago back in July when all this was supposed to happen; that she didn't remember going into Judge's chambers to talk to him. Defense counsel was able to elicit detailed testimony about "Peter," the first named perpetrator. A.C. testified that "Pappy Brian" and Appellant "fought" around her at times and she wished they wouldn't fight. She also testified about staying at her father's house; how "crowded" it was; and how she "had to sleep naked" there.

{¶51} All of the above testimony challenged A.C.'s credibility. It also effectively planted the idea within the jurors' minds that A.C. might

have been "coached" to testify or that she might be testifying in order to "please" her new prosecutor friend. Additionally, the testimony regarding all the people at her father's house allowed both defense counsel to make the argument that someone other than Powers had the opportunity to have abused A.C. Trial counsel for Powers engaged in an effective cross-examination. As in *Guysinger*, had Appellant's counsel undertaken additional cross-examination, it could have "undone" any successes achieved by Powers' counsel, and may have bolstered the State's case or may have evoked more sympathy for the child victim.

{¶52} We view Appellant's counsel's decision not to cross-examine A.C. as an obvious strategic decision. As to the decisions not to cross-examine Andrea Crace, Detective Hamilton, Detective Brewer, Valerie Pinson, Officer Bower, Timothy Augsback, and Dylan Waggy—it also appears these decisions not to cross-examine may be considered sound trial strategy.

{¶53} Andrea Crace testified as to the chain of custody of the rape kit that was used to collect any evidence from A.C. at the SOMC ER. On cross-examination, counsel for Powers elicited testimony that although the rape kit was placed into a safe, it was not refrigerated. Detective Hamilton testified as to the chain of custody of the rape kit, the swabs attached thereto, and the

Portsmouth Police Department's property routing form.  Powers counsel

also elicited testimony that the evidence locker at the police department was

not refrigerated.

{¶54} Detective Brewer also testified regarding chain of custody for

the rape kit as well as the Playstation and the property inventory sheet for

the Playstation.  Valerie Pinson, the records clerk, and Officer Bower also

testified as to chain of custody.  We do not find Appellant's counsel's

performance to be deficient for failing to cross-examine the above witnesses.

Powers' trial counsel had conducted effective cross-examinations, raising

evidentiary concerns with the DNA storage.  Had Appellant's counsel

chosen to also pursue these topics, he may have annoyed the jurors and the

trial court with needless repetition.

{¶55} Timothy Augsback, the forensic scientist, testified as to the

chain of custody process at BCI.  He identified the rape kit, the oral swabs

from Brian Powers, and the DNA analysis report he prepared.  Augsback

tested the swabs and determined male DNA was present.  On cross-

examination, counsel for co-defendant Powers elicited testimony that delay

in testing DNA "could" be a problem.  He also testified that, though

unlikely, it is possible that DNA could be transmitted by touch, such as

falling off a person as they folded another's clothes. Appellant's DNA was never an issue in this case.

{¶56} Dylan Waggy, a computer forensic specialist, also testified as to custody of evidence logged in at BCI. He analyzed the Playstation's hard drive, took photographs, and reviewed the web search history. On cross-examination, counsel for Powers emphasized that the report was not about the original hard drive but about a cloned drive, and that the Playstation was an older model. Waggy admitted it was possible that the websites accessed were "popup" websites. When Appellant's counsel was offered the opportunity to cross-examine Waggy, counsel stated: "I'm not involved in this." Given that Appellant was not charged with illegal use of a minor in nudity-oriented material or performance, we construe Appellant's counsel's decision not to cross-examine Dylan Waggy as entirely reasonable.

{¶57} Based on the foregoing comprehensive review of witness testimony, we conclude that trial counsel's failure to cross-examine 8 of 16 witnesses appears to have been trial strategy. We find Appellant's claim of ineffective assistance on this basis is pure speculation. Speculation is insufficient to establish either the deficient performance or prejudice requirements of an ineffective assistance claim. *See Guysinger, supra,* at ¶ 31, citing *State v. Short*, 129 Ohio St. 3d 360, 2011-Ohio-3641, 952 N.E.

2d 1121, at ¶ 119.  For the foregoing reasons, we find no merit to the second and third assignments of error.  Accordingly, those assignments of error are hereby overruled.

### ASSIGNMENT OF ERROR FOUR - WEIGHT OF THE EVIDENCE

### A. STANDARD OF REVIEW

{¶58} A claim of insufficient evidence invokes a due process concern and raises the question whether the evidence is legally sufficient to support the verdict as a matter of law.  *State v. Wickersham,* 4th Dist. Meigs No. 13CA10, 2015-Ohio-2756, at ¶ 22, citing, *State v. Thompkins,* 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).  When reviewing the sufficiency of the evidence, our inquiry focuses primarily upon the adequacy of the evidence; that is, whether the evidence, if believed, reasonably could support a finding of guilt beyond a reasonable doubt.  *Thompkins*, syllabus.  The standard of review is whether, after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt.  *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Jenks,* 61 Ohio St.3d 259, 273, 574 N.E.2d 492 (1991).  Furthermore, a reviewing court is not to assess "whether the state's evidence is to be believed, but whether, if believed, the

evidence against a defendant would support a conviction." *Thompkins*, 78

Ohio St.3d at 390 (Cook, J., concurring).

{¶59} Thus, when reviewing a sufficiency-of-the-evidence claim, an

appellate court must construe the evidence in a light most favorable to the

prosecution. *Wickersham, supra,* at ¶ 23; *State v. Hill,* 75 Ohio St.3d 195,

205, 661 N.E.2d 1068 (1996); *State v. Grant,* 67 Ohio St.3d 465, 477, 620

N.E.2d 50 (1993). A reviewing court will not overturn a conviction on a

sufficiency-of-the-evidence claim unless reasonable minds could not reach

the conclusion that the trier of fact did. *State v. Tibbetts,* 92 Ohio St.3d 146,

162, 749 N.E.2d 226 (2001); *State v. Treesh,* 90 Ohio St.3d 460, 484, 739

N.E.2d 749 (2001).

{¶60} " 'Although a court of appeals may determine that a judgment

of a trial court is sustained by sufficient evidence, that court may

nevertheless conclude that the judgment is against the weight of the

evidence.' " *Wickersham, supra*, at ¶ 24, quoting, *Thompkins,* 78 Ohio St.3d

at 387. " 'Weight of the evidence concerns "the inclination of the greater

amount of credible evidence, offered in a trial, to support one side of the

issue rather than the other. It indicates clearly to the jury that the party

having the burden of proof will be entitled to their verdict, if, on weighing

the evidence in their minds, they shall find the greater amount of credible

evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief." ' " *Eastley v. Volkman,* 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 12, quoting *Thompkins,* 78 Ohio St.3d at 387, quoting Black's Law Dictionary 1594 (6th ed.1990).

{¶61} When an appellate court considers a claim that a conviction is against the manifest weight of the evidence, the court must dutifully examine the entire record, weigh the evidence, and consider the credibility of witnesses. The reviewing court must bear in mind, however, that credibility generally is an issue for the trier of fact to resolve. *Wickersham, supra,* at ¶ 25; *State v. Issa,* 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001); *State v. Murphy,* 4th Dist. Ross No. 07CA2953, 2008-Ohio-1744, ¶ 31. " 'Because the trier of fact sees and hears the witnesses and is particularly competent to decide "whether, and to what extent, to credit the testimony of particular witnesses," we must afford substantial deference to its determinations of credibility.' " *Barberton v. Jenney*, 126 Ohio St.3d 5, 2010-Ohio-2420, 929 N.E.2d 1047, ¶ 20, quoting *State v. Konya,* 2nd Dist. Montgomery No. 21434, 2006-Ohio-6312, ¶ 6, quoting *State v. Lawson*, 2nd Dist. Montgomery No. 16288 (Aug. 22, 1997). As the *Eastley* court explained:

" '[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment must be made in favor of the judgment and the finding of facts. * * *

If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment.' " *Eastley* at ¶ 21, quoting *Seasons Coal Co., Inc. v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn.3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191-192 (1978).

Thus, an appellate court will leave the issues of weight and credibility of the evidence to the fact finder, as long as a rational basis exists in the record for its decision. *State v.Picklesimer,* 4th Dist. Pickaway No. 11CA9, 2012–Ohio–1282,¶ 24; accord *State v. Howard, 4th* Dist. Ross No. 07CA2948, 2007–Ohio–6331, ¶ 6 ("We will not intercede as long as the trier of fact has some factual and rational basis for its determination of credibility and weight.").

{¶62} Once the reviewing court finishes its examination, the court may reverse the judgment of conviction only if it appears that the fact-finder,

when resolving the conflicts in evidence, " ' "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered ." ' " W*ickersham, supra,* ¶ 26, quoting, *Thompkins,* 78 Ohio St.3d at 387, quoting *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).  A reviewing court should find a conviction against the manifest weight of the evidence only in the " 'exceptional case in which the evidence weighs heavily against the conviction.' " *Id*., quoting *Martin,* at 175; *State v. Lindsey,* 87 Ohio St.3d 479, 483, 721 N.E.2d 995 (2000).

{¶63} When an appellate court concludes that the weight of the evidence supports a defendant's conviction, this conclusion necessarily includes a finding that sufficient evidence supports the conviction. *Wickersham, supra,* at ¶ 27; *State v. Pollitt*, 4th Dist. Scioto No. 08CA3263, 2010-Ohio-2556, ¶ 15.  " 'Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency.' " S*tate v. Lombardi,* 9th Dist. Summit No. 22435, 2005-Ohio-4942, ¶ 9, quoting *State v. Roberts,* 9th Dist. Lorain No. 96CA006462 (Sept. 17, 1997).  In the case sub judice, therefore, we first consider Appellant's argument that her convictions are against the manifest weight of the evidence.

## B.  LEGAL ANALYSIS

{¶64} Appellant was convicted on three counts of rape and one count of endangering children upon a theory of complicity.  Appellant asserts that the evidence adduced at trial was legally insufficient and also the verdicts were against the manifest weight of the evidence.  The complicity statute, R.C. 2923.03(A)(2), states in pertinent part:  "No person, acting with the kind of culpability required for the commission of an offense, shall * * * [a]id or abet another in committing the offense[.]"  Under R.C. 2923.03(F), " '[a] charge of complicity may be stated in terms of [that] section, or in terms of the principal offense.' "  *State v. Wingfield,* 8th Dist. Cuyahoga No. 107196, 2019-Ohio-1644, at ¶ 65, quoting *State v. McKelton,* 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, ¶ 244.  In Ohio, when an individual acts to aid or abet a principal in the commission of an offense, the individual and principal are equally guilty and the individual is prosecuted and punished as if he were a principal offender.  *Wingfield, supra*. See R.C. 2923.03(F).  Thus, to sustain Appellant's complicity to rape and endangering children, the evidence must show that Appellant knowingly aided or abetted Brian Powers in committing rape and endangering children.

{¶65} Appellant contends that A.C.'s testimony is "unreliable at best."  Appellant also points to the fact that she actually provided

incriminating evidence against Powers to the police.  While Appellant

concedes she failed to abide perfectly by the juvenile court's order, she

argues that the evidence does not support the conclusion that she aided

Powers.  For the reasons which follow, we disagree with Appellant.

{¶66} " 'To support a conviction for complicity by aiding and

abetting pursuant to R.C. 2923.03(A)(2), the evidence must show that the

defendant supported, assisted, encouraged, cooperated with, advised, or

incited the principal in the commission of the crime, and that the defendant

shared the criminal intent of the principal.  Such intent may be inferred from

the circumstances surrounding the crime.' " *State v. Pickett*, 4th Dist.

Athens No. 15CA13, 2016-Ohio-4593, at ¶ 32, quoting, *State v. Johnson,* 93

Ohio St.3d 240, 754 N.E.2d 796 (2001), syllabus; accord In re T.K., 109

Ohio St.3d 512, 2006-Ohio-3056, 849 N.E.2d 286, ¶ 13.  " 'Participation in

criminal intent may be inferred from presence, companionship and conduct

before and after the offense is committed.' " *Johnson,* 93 Ohio St.3d at 245,

754 N.E.2d 796, quoting *State v. Pruett,* 28 Ohio App.2d 29, 34, 273 N.E.2d

884 (4th Dist.1971).  However, " 'the mere presence of an accused at the

scene of a crime is not sufficient to prove, in and of itself, that the accused

was an aider and abettor.' " *Id.* at 243, quoting *State v. Widner*, 69 Ohio

St.2d 267, 269, 431 N.E.2d 1025 (1982).  "This rule is to protect innocent

bystanders who have no connection to the crime other than simply being present at the time of its commission." *Id. See also State v. Louis,* 2016-Ohio-7596, 73 N.E.3d 917 (4th Dist.), at ¶ 54.

{¶67} Count 1, rape, alleged:

On or about July 20, 2017,at Scioto County, Ohio, * * * Sheri K. Trout (B), unlawfully, did engage in sexual conduct with A.C. 10/29/2012, who was not the spouse of the offender, whose age at the time of the said sexual conduct was less than thirteen years of age, to wit: dob: 10/29/12, whether or not the offender knew the age of A.C. 10/29/2012. Furthermore, the victim was less than ten years of age. In violation of Ohio Revised Code 2907.02(A)(1)(b), 2907.02(B), and against the peace and dignity of the State of Ohio.

{¶68} Count 3, rape, contained the exact allegations as Count 1, adding that "the offender did cause serious physical harm to the victim." Count 4, rape, contained the exact allegations as Counts 1 and 3, adding that "[T]he offender purposely compelled the victim to submit by force or threat of force."

{¶69} Count 7, endangering children, alleged:

On or about July 20, 2017, at Scioto County, Ohio * * *, Sheri K. Trout (B), unlawfully, was a parent, guardian, custodian, person having custody or control, or person in loco parentis of a child under eighteen years of age, who did create a substantial risk to the health or safety of A.C. 10/29/2012, by violating a duty of care, protection, or support. * * * [T]he violation resulted in serious physical harm to A.C. 10/29/2012. In violation of Ohio Revised Code 2919.22(A), 2919.22(E)(2)(c), and against the peace and dignity of the State of Ohio.

{¶70} As indicated, the State of Ohio pursued a theory of complicity against Appellant. The trial court instructed the jury as to the legal definition of complicity as follows:

The Defendant, Sheri Trout, is charged with complicity in the commission of the offense of Rape and Kidnapping * * *. Before you can find the Defendant, Sheri Trout guilty, you must find beyond a reasonable doubt, that on or about the 20th day of July, 2017, and in Scioto County, the Defendant aided or abetted another in committing the offense of Rape and Kidnapping. A person acts knowing, regardless of purpose, when the person is aware that the person's conduct will

probably cause a certain result or be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. Because you cannot look into the mind of another, knowledge is determined from all the facts and circumstances in evidence. You will determine from these facts and circumstances whether there existed at the time in the - - in the mind of the Defendant, Sheri Trout, an awareness of the probability that Defendant Brian Powers committed the crimes of Rape and Kidnapping. Before you can find the Defendant guilty of complicity by aiding or abetting * * *, you must find beyond a reasonable doubt that the Defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal offender in the commission of the offense and that the Defendant shared the criminal intent of the principal offender. Such intent may be inferred from the circumstances surrounding the offense including but not limited to presence, companionship, and conduct before and after the offense was committed. The mere presence of the Defendant at the scene of the offense is not sufficient to prove, in and of itself, that the Defendant was an aider and abettor. The

Defendant cannot be found guilty of complicity unless the offense was actually committed.

{¶71} *State v. Louis*, *supra*, involved a particularly egregious example of complicity to criminal acts, also involving a grandmother who assisted a boyfriend in sexual abuse of her grandchildren and was convicted. In *Louis,* the state presented evidence that Louis knew Sanchez was repeatedly raping her granddaughters, Jm.L. and Jn.L. because both girls testified that they repeatedly told Louis about Sanchez's crimes. Jm.L. testified that she told Louis in November 2013 and "we said it a lot and my grandma never did nothing." *Id*. at ¶ 55. Louis provided Sanchez with a place to carry out the rapes, tied and chained Sanchez's victims, and provided Sanchez with unlimited continuous access to the victims. *Id*. She was present in the home while the rapes were occurring, only yards away in a room with no doors. *Id*.

{¶72} In *Louis,* we found that in weighing the evidence and all reasonable inferences and considering the credibility of witnesses, the jury did not clearly lose its way when it found Louis had supported and assisted Sanchez in the rapes. Nor did it lose its way when it found Louis had shared Sanchez's criminal intent by inference from her presence, companionship

and conduct before, during and after the rapes. Louis was "far from being just an innocent bystander in the wrong place at the wrong time." *Id*. at ¶ 56.

{¶73} In Appellant's case, the evidence used to convict her of complicity to rape and child endangering was not as direct. However, it is well established that the elements of an offense may be proven by direct evidence, circumstantial evidence, or both. *State v. Wingfield,* 8th Dist. Cuyahoga No. 107196, 2019-Ohio-1644, at ¶ 51. *See State v. Durr,* 58 Ohio St.3d 86, 568 N.E.2d 674 (1991). Direct evidence exists when "a witness testifies about a matter within the witness's personal knowledge such that the trier of fact is not required to draw an inference from the evidence to the proposition that it is offered to establish." *State v. Cassano*, 8th Dist. Cuyahoga No. 97228, 2012-Ohio-4047, ¶ 13. Circumstantial evidence, on the other hand, is evidence that requires "the drawing of inferences that are reasonably permitted by the evidence." *Id. See also State v. Hartman*, 8th Dist. Cuyahoga No. 90284, 2008-Ohio-3683, ¶ 37 ("[c]ircumstantial evidence is the proof of facts by direct evidence from which the trier of fact may infer or derive by reasoning other facts in accordance with the common experience of mankind").

{¶74} Circumstantial and direct evidence are of equal evidentiary value. *Wingfield, supra,* at ¶ 52; *State v. Santiago,* 8th Dist. Cuyahoga No.

95333, 2011-Ohio-1691, ¶ 12. "Although there are obvious differences between direct and circumstantial evidence, those differences are irrelevant to the probative value of the evidence." *Cassano* at ¶ 13, citing *State v. Treesh,* 90 Ohio St.3d 460, 485, 739 N.E.2d 749 (2001). In some cases, circumstantial evidence may be " 'more certain, satisfying and persuasive than direct evidence.' " *State v. Lott,* 51 Ohio St.3d 160, 167, 555 N.E.2d 293 (1990), quoting *Michalic v. Cleveland Tankers, Inc.,* 364 U.S. 325, 330, 81 S.Ct. 6, 5 L.Ed.2d 20 (1960). *See also*, *State v. Dunn*, 4th Dist. Jackson No. 15CA1, 2017-Ohio-518, at ¶ 67; *State v. Grube*, 2013-Ohio-692, 987 N.E.2d 287 (4th Dist.), ¶ 30.

{¶75} In this case, much of the evidence used to convict both Powers and Appellant was circumstantial, hinging on A.C.'s credibility. However, " '[i]t is well settled that a rape conviction may rest solely on the victim's testimony, if believed, and that "[t]here is no requirement that a rape victim's testimony be corroborated as a condition precedent to conviction." ' " *State v. Schroeder,* 4th Dist. Adams No. 18CA1077, 2019-Ohio-4136, at ¶ 84; *State v. Horsley,* 2018-Ohio-1591, 110 N.E.3d 624 (4th Dist.) at ¶ 74; *State v. Canterbury,* 4th Dist. Athens No. 13CA34, 2015-Ohio-1926, 2015 WL 2452024, at ¶ 62; quoting *State v. Patterson,* 8th Dist. Cuyahoga No.

100086, 2014-Ohio-1621, 2014 WL 1513893, at ¶ 40; quoting *State v. Lewis,* 70 Ohio App.3d 624, 638, 591 N.E.2d 854 (4th Dist. 1990).

{¶76} We have set forth the pertinent facts above. The jury apparently found A.C. and the other State's witnesses to be credible and compelling. Powers was convicted as the principal offender. In closing, the prosecutor argued Appellant's complicity by the fact that Appellant failed to comply with the juvenile court's order, which gave Powers access to A.C. The prosecutor also emphasized the smallness of the house in which Appellant lived. Furthermore, the jury heard Ashley Muse-Gigley's testimony that "Sheri knew and they fought."

{¶77} A.C. testified on direct that when she met with the prosecutor, they talked "about what Brian Powers did" at Appellant's house, in A.C.'s own room behind a chair. A.C. testified she "screamed for Mammaw Sheri," and Appellant came in and said "don't touch my granddaughter again." Cindy Justice's testimony corroborated A.C.'s as to Appellant's knowledge. This evidence demonstrated that Appellant was aware of the sexual abuse and did nothing to stop it, save a verbal warning. A.C. also testified her mother, Hannah Giles, told her to say "Mammaw Sheri didn't come in" because "she wants this court over so I can go over to her house."

{¶78} A jury is in the best position to view the witnesses and to observe witness demeanor, gestures and voice inflections, and to use those observations to weigh credibility. *Dunn, supra,* at ¶ 75. *See Myers v. Garson*, 66 Ohio St.3d 610, 615, 614 N.E.2d 742 (1993); *Seasons Coal Co. v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). While this case is a far cry from the factual scenario which convicted Louis for complicity, the jury apparently found the facts warranted Appellant's convictions for three counts of rape on a theory of complicity. Appellate courts should not generally second-guess juries on matters of weight and credibility. *See State v. Vance*, 4th Dist. Athens No. 03CA27, 2004-Ohio-5370, at ¶ 10. We decline to do so. The jury was in the best position to view A.C. and the other witnesses and to determine their credibility. Based on the foregoing, we find the jury did not lose its way and Appellant's convictions for rape are not against the manifest weight of the evidence. In addition, based on the facts set forth at length above, Appellant's conviction for endangering children is also not against the manifest weight of the evidence.

{¶79} Having found Appellant's convictions for rape and child endangering are not against the manifest weight of the evidence, we necessarily find her convictions are supported by sufficient evidence. As

such, we find no merit to the fourth assignment of error. As such, it is hereby overruled.

## CONCLUSION

{¶80} We have found no merit to any of Appellant's four assignments of error. Accordingly, all assignments of error are overruled. The judgment of the trial court is affirmed.

**JUDGMENT AFFIRMED.**

## JUDGMENT ENTRY

It is ordered that the JUDGMENT BE AFFIRMED and costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. and Hess, J. concur in Judgment and Opinion.

For the Court,

_____

Jason P. Smith
Presiding Judge

### NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**